### ROWLAND v. BIESECKER.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

No. 129.

**1.** PATENTS (§ 211*)—LICENSES—CONSTRUCTION AND OPERATION.

A license contract under a patent, providing that "this agreement to extend five years from date with a privilege of ten years or terminate at any time if by mutual consent of both parties," gave the licensee the privilege of continuing for ten years which he could exercise ex parte, and it was sufficient to extend the license if he continued making the patented machines or otherwise indicated his intention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 304–311; Dec. Dig. § 211.*]

**2.** COURTS (§ 349*)—WITNESSES—COMPETENCY IN FEDERAL COURTS.

Under Rev. St. § 858, as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 (U. S. Comp. St. Supp. 1909, p. 242), which provides that the competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. state. and Code Civ. Proc. N. Y. § 829, the testimony of a defendant in a suit in equity for infringement of a patent, brought by an assignee, as to personal transactions between himself and complainant's assignor, since deceased, is incompetent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 925; Dec. Dig. § 349.*

Competency in federal courts—Following state practice. See notes to O'Connell v. Reed, 5 C. C. A. 602; Bank of California v. Cowan, 21 C. C. A. 278.]

3. PATENTS (§ 211*)—LICENSES—CONSTRUCTION.

Where a license under a patent required the licensee to pay a royalty on machines sold, but contained no provision as to the effect of a default, mere delay in the payment of royalties did not operate to terminate the license.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 304–311; Dec. Dig. § 211.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by James Rowland against John S. Biesecker. Decree for defendant (181 Fed. 128), and complainant appeals. Affirmed.

J. K. Macdonald and E. S. Macdonald, for appellant.

George C. De Lacy (J. Elmer Melick, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The bill is in the form usually employed in suits for infringement of patent, praying injunction and accounting. The patent declared upon is No. 624,261, granted May 2, 1899, to Reuben R. Stone, as inventor for a butter-cutting machine. Assignment to complainant on November 13, 1906, of all right, title, and interest to the patent and said invention and improvement was alleged and proved. It is charged that since the date of assignment and complainant's ownership of said patent defendant has made and sold butter-cutting machines made according to and containing the invention of the patent. The answer admits that defendant has made and sold and continues to make and sell butter-cutting machines pursuant to an agreement made with Stone, advertising them as made in conformity to the patent and making and selling under such representations. Except for the agreement above referred to, infringement is conceded, and we have a suit for such infringement of which the Circuit Court had jurisdiction, although both parties are citizens of New York.

The sole defense is based upon a written agreement of license and some testimony as to transactions between the parties supplementary thereto. If such an agreement covering the period alleged in the complaint be proved, a suit for infringement will not lie.

The license agreement between Stone and Biesecker bears date July 31, 1899. It gives to the second party, Biesecker, the exclusive trade and control in the United States of the "aforementioned Stone butter-cutter"; Biesecker agreeing to use diligence to push its sale, and not to handle competing machines. Royalty was to come through Stone's furnishing the machines to Biesecker for $70 each; or, if the

second party were able to get them made cheaper, he might do so, and in that event should pay a royalty of $25 on each machine. The document contains this clause:

"This agreement to extend five years from date with a privilege of ten years, or terminate at any time if by mutual consent of both parties."

Manifestly this gave defendant the right to continue selling the machines under the contract for 10 years, if he chose to do so. No consent of Stone was required as a prerequisite to continuing sales after the expiration of the first five years. Nevertheless defendant undertook to prove a later oral agreement with Stone entered into before the expiration of the five years, whereby the latter agreed to let him have the sale of these machines for the remaining five years and would forego his royalties, defendant, however, to pay him what defendant thought right for any information, as to a probable purchaser, which might lead to his selling a machine. Defendant testified at great length as to this alleged oral agreement, but since Stone died in the latter part of November, 1906, the testimony was by "a party interested in the event" of the suit, "concerning a personal transaction or communication between the witness and the deceased person" from whom the other party derived title by assignment. It must be excluded under section 858 of the United States Revised Statutes, as amended in 1906 (Act June 29, 1906, c. 3608, 34 Stat. 618 [U. S. Comp. St. Supp. 1909, p. 242]), and the New York Code of Civil Procedure, § 829. With this testimony out of the case, the evidence as to a subsequent oral agreement is very slight. We need not discuss it, because so far as this suit for infringement is concerned it is not necessary to determine whether or not there was any such oral agreement.

We concur with the judge who heard the cause at circuit that defendant's privilege of continuing for 10 years was one which he could "exercise ex parte. Nor were there any formalities prescribed as to the mode of its exercise. Had the defendant orally told Stone that he meant to go on, that was enough, whether Stone assented or not." We are also satisfied that:

"No more was necessary than that the defendant should go on making machines, or in any other way indicating his intention to use the remaining period of his license."

The evidence shows he did go on selling the machines, only with the parts a little heavier, during the lifetime of Stone subsequent to July 31, 1904. Not many were sold, eight or nine apparently, but only a few were sold during the first five years. There is quite sufficient to show defendant continued to sell during the second five years.

The case differs materially from Seal v. Bookkeeper, 130 Fed. 449, 64 C. C. A. 651, relied on by complainant, where it was provided that the second party might renew for an extended period "by mailing first party, at least thirty days before August 1st, 1900, written notice of his intention so to do."

It is shown by the record that during the second period defendant did not pay the amount of royalties specified in the contract, but the contract does not contain the clause, usually found in such instruments, to the effect that for default in payment continued for some specified

period the other party may by giving notice of his election to do so revoke the license. In the absence of any such provision, mere delay in payment, though long continued, would, of course, give a right to sue for royalties but would not ipso facto operate to annul the contract. No attempt has been made by Stone or by complainant to revoke the agreement for breaches by defendant. So far as this suit is concerned, we have a license, existing when suit was brought, which precludes recovery in the ordinary action for alleged infringement.

Whether any royalties are due, or whether subsequent agreements of the parties to the contract have excused their payment, are questions the federal court cannot investigate, since both parties to the suit are residents of the same state. It may be noted that defendant ceased selling machines on the expiration of the 10 years, and withdrew offers' of such machines from his colleagues. He protests that he has no intention of handling them for the residue of the life of the patent, unless he can make some arrangement with the present owner of the patent.

The decree is affirmed, with costs.