DEWBERRY *v.* FÜRST & THOMAS.

Opinion delivered November 8, 1920.

1. EVIDENCE—WRITTEN AGREEMENT—PAROL MODIFICATION.—A written agreement may, in the absence of statutory provision requiring a writing, be modified by a subsequent oral agreement.

2.  APPEAL AND ERROR—EXCLUSION OF EVIDENCE HARMLESS ERROR.—In
a suit against the guarantors of payment for a stock of mer-
chandise, the exclusion of evidence of an agreement to release
the guarantors was harmless where it was shown that the release
never became effective.

3.  TRIAL—SUFFICIENCY OF VERDICT.—Where undisputed evidence es-
tablished that, if plaintiff was entitled to recover, he was entitled
to judgment for the amount sued for, a verdict finding simply
for the plaintiff was sufficient in form, especially where the court
inquired of the jury the amount, and they replied, "For the
amount he sues for."

Appeal from White Circuit Court; *J. M. Jackson,*
Judge; affirmed.

*Brundidge & Neelly,* for appellants.

1.   There are three reasons for reversal, because (1)
the court erred in refusing to permit defendants to tes-
tify as to the rescission of the original contract between
plaintiffs and defendants, (2) the court erred in its in-
struction on that question, and (3) the verdict was con-
trary to the law in that it found for no specified amount.
The contract had been rescinded by another contract be-
tween the same parties after Dewberry became in ill
health and unable to continue the work and plaintiffs
agreed to secure a new man who would give a new bond,
and appellants could turn over the stuff to him and be
released from the bond. This was a complete defense.
6 R. C. L., p. 922, par. 306; 13 C. J. 593-5, § 614. In this
case a new agreement was made and a new party fur-
nished who made a satisfactory bond.

2.   The jury failed in their verdict to find any sum
whatever and is void.   29 Ark. 597.

*Avery M. Blount,* for appellees.

The court had all the facts before it, the jury were
properly instructed and the verdict is supported by the
evidence.   None of the contentions of appellant are ten-
able.   163 S. W. 662; 115 Ark. 166; 124 *Id.* 597, and
*Lange Med. Co.* v. *Johnson,* 131 Ark. 15.   The latter
case is almost identical with this.   The letters attempted
to be introduced were secondary evidence and not admis-

sible. 6 R. C. L. 306 is correct but does not apply, nor is 29 Ark. 595 applicable.

WOOD, J. The appellees, a partnership doing business at Freeport, Illinois, entered into a contract with W. A. Dewberry of Searcy, Arkansas, by which the appellees sold to Dewberry certain merchandise on credit. Dewberry entered into a contract of guaranty with the appellees for the performance of the contract on his part, which contract of guaranty was signed by W. C. Sneed, J. A. Verner, and Theo. Phillips, the other appellants. Dewberry's health failed, and he terminated the contract in July, 1915. He had on hand at that time merchandise of the value of $169.19. The appellees credited him with the amount of the stock on hand and instituted this action against the appellants for the balance of the account due. The appellants defended on the ground that the contract between them and the appellees had been rescinded by another contract entered into between the appellants and the appellees. The testimony on this issue is substantially as follows:

Clyde Calhoun testified that he lived in Searcy; that he made a contract with the appellees for the sale of merchandise. He had an understanding with Sneed, Phillips and Verner that he was to go to Hempstead County to take the place of Mr. W. A. Dewberry. He wrote the appellees, and they replied that witness could have Dewberry's place when witness made a bond, which witness did. Witness did not take Dewberry's place in Hempstead County, however, for appellees told witness that he could have White County, and he dropped the work down in Hempstead. He never entered into the business or sold any goods for the appellees down there; never took over Dewberry's accounts or attempted to collect the same; he did not take over the stock of merchandise or become liable for it. He made a bond and went to Hempstead County for the purpose of taking over Dewberry's business, but learned that White, his home county, was vacant, and he preferred to work

there. The appellees never refused to give witness Hempstead County. The court, over the objection of appellants, excluded the above testimony.

Witness Sneed testified that, after Dewberry became ill, appellants took up by correspondence with the appellees the matter in regard to getting another man to take Dewberry's place in Hempstead County, who would assume the indebtedness of Dewberry and relieve Dewberry's guarantors. Witness received a letter from the appellees, dated August 9, 1915, in which, among other things, they said: "We are glad to know that you think you will be able to get a man to take his (Dewberry's) territory." Appellees in this letter stated that it would be all right as far as appellees were concerned for the guarantors to hold the goods in order to give them a chance to secure some one for the territory; that, if the guarantors did not get any one to take Dewberry's place, they had better arrange to have the goods shipped back to appellees on Dewberry's account, and concluded the letter as follows: "We hope everything will work out all right, so that there won't be any financial loss to you and any other of the guarantors." In another letter from the appellees, dated September 28, 1915, they say: "We have been unable to get any information concerning the financial responsibility of the guarantors on Mr. Calhoun's contract. We have written to the recorder of deeds and are hoping to get a favorable reply soon. Mr. Calhoun has been highly recommended to us, and we are indeed anxious to start him in the business. Just as soon as we get a report, we will let you know whether or not we can accept the contract, and then you can act accordingly."

Witness stated that the guarantors after this turned over Dewberry's stock to Calhoun and considered that they had nothing further to do with it and wrote the appellees to that effect, and on September 23d had a letter from appellees, as follows: "We are pleased to advise you that we have accepted the contract from C. P.

Calhoun, and the Dewberry stock can now be transferred to him. We have sent Mr. Calhoun a blank on which to furnish us a list of the goods to be transferred." Witness continuing said that, after receiving the above letter, he considered the matter closed, so far as the guarantors were concerned. Witness went with Calhoun to Hope and helped him pack up his stuff and ship it back to appellees. This was after the appellees had written that they had made a mistake in assigning Calhoun that county. Witness wrote to appellees that, if they would release the guarantors from the bond, they would get appellees another salesman, and the appellees accepted the proposition.

The court ruled that the correspondence and the oral testimony in regard to the appellees accepting Calhoun in the place of Dewberry and releasing the appellants' guarantors from the contract of guaranty was incompetent because it tended to vary the terms of a written contract. The court, among other things, instructed the jury that the action was brought by the appellees against Dewberry and the other appellants as sureties or guarantors on his bond for goods furnished by the appellees to Dewberry; that if they found from the evidence that appellees furnished Dewberry with certain goods, and that Dewberry refused to pay for same after demand was made, the verdict would be in favor of the appellees in such amount as the jury found was due them. The jury returned the following verdict: "We, the jury, find for the plaintiff." The court thereupon asked the following question: "Do you mean to say, gentlemen, $228.93?" A juror responded: "For the amount he sues for." The appellants objected to the verdict. Thereupon judgment was rendered in favor of the appellees for $228.93, from which is this appeal.

The appellants challenged the ruling of the court in excluding the oral testimony and the correspondence. The court erred in holding that the letters and oral testimony offered by the appellants were incompetent. The

law is well settled that "a written contract may, in the absence of statutory provision requiring a writing, be modified by a subsequent oral agreement." 13 Corpus Juris, 593; 6 Rul. Case Law, section 306, p. 922, and cases cited in note to the above; 1 Black on Rescission and Cancellation of Contracts, section 13; *Von Berg* v. *Goodman,* 85 Ark. 605; *Brickey* v. *Continental Gin Co.,* 113 Ark. 15.

The error of the court, however, in excluding this testimony from the jury was not prejudicial to the rights of appellants; for, when the oral testimony and the written correspondence is considered, it is not sufficient to show a completed contract on the part of the appellees and the appellants, whereby the latter were released from the obligations of their contract. The oral testimony and the correspondence show that Calhoun was to be substituted for Dewberry to take over his stock of merchandise and to carry out his contract. The appellees accepted the contract to substitute Calhoun for Dewberry, but the undisputed testimony shows that Calhoun, after making bond, which was accepted by the appellees, upon being informed by the appellees that he could have White County, dropped the work in Hempstead County; that he did not assume the business, did not take over the stock of merchandise that Dewberry had or his accounts, and did not become responsible for them or attempt to collect them. Thus the undisputed testimony shows that the consideration for the contract of rescission on the part of the appellants failed. The contract was never completed because Calhoun failed to comply with the conditions upon which the contract, which is the basis of this action, was to be rescinded. The contract, being in full force, the undisputed evidence shows that the amount due the appellees on the contract, and for which they sued, was the amount for which the jury returned a verdict. The sum was definitely ascertained, and the inquiry of the court to the jury and the answer thereto showed that the verdict was returned for this

specified amount.   There was no error in the form of the verdict.

The judgment is correct, and it is affirmed·