## 11581

### NATIONAL LOAN & EXCHANGE BANK v. TOLBERT *ET AL.*

#### (124 S. E., 772)

1. EVIDENCE—PAROL EVIDENCE NOT ADMISSIBLE TO PROVE ASSIGNEE WAS OTHER THAN ONE DESIGNATED IN ASSIGNMENT.—Parol evidence is not admissible to prove that assignee was party other than one designated by written assignment.

2. EVIDENCE—PAROL EVIDENCE HELD NOT ADMISSIBLE TO PROVE TRUE CONSIDERATION OF NOTE.—Where amount of note payable to bank

NOTE: On the general rule that parol evidence not admissible to vary, add to, or alter a written instrument, see note in 17 L. R. A. 270.

was too large in proportion to bank's capital to be loaned to one person, and bank on maturity took other note for a portion thereof, and third note for balance from maker's brother, the brother, in bank's action on third note, could not show true consideration of note.

3. BANKS AND BANKING—MAKER, IN PROCURING THIRD PARTY TO SIGN NEW NOTE TO STOP BANK'S PROCEEDING TO SELL SECURITY, WAS NOT BANK'S AGENT.—Where payee bank, on maturity of note secured by warehouse receipts for cotton, agreed not to sell the cotton if maker would execute other note for a portion of the amount of the debt and procure note from third party for balance, the maker, in so procuring note, was not payee's agent.

Before JOHNSON, J., Greenwood, October, 1923. Affirmed.

Action by the National Loan & Exchange Bank of Greenwood against R. R. Tolbert and T. P. Tolbert. Judgment for plaintiff and last named defendant appeals.

*Messrs.. Thurmond & Daniel,* for appellant, cite: *Parol evidence admissible to show consideration:* 44 S. C., 544; 13 S. C., 328; 72 S. C., 402; 53 S. C., 483; 119 S. C., 359; 2 Hill 404; 97 S. C., 203; 121 S. C., 440. *Presumption that exclusion of evidence is prejudicial:* 119 S. C., 134. *Verdict improperly directed:* 91 S. C., 440; 85 S. C., 479.

*Messrs. Grier, Park & McDonald,* for respondent, cite: *Parol evidence inadmissible to vary written agreement:* 82 S. C., 304; 112 S. C., 211; 121 S. C., 437; 28 L. R. A. (N. S.), 511; 8 L. Ed., 316; 119 S. E., 581.

October 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

R. R. Tolbert was indebted to the respondent bank in the sum of $19,500, evidenced by his note, secured by an assignment of warehouse receipts for 156 bales of cotton. The note was due and the bank made a bargain to sell the cotton. Before the sale was consummated, R. R. Tolbert learned of the sale and went to the bank and asked for fur-

ther time.    He thought, as so many others did, that cotton
would go up in price.    Mr. Bailey, the vice president and
cashier, who conducted the matter for the bank, told Mr.
Tolbert that the amount of the note was too large in pro-
portion to the capital stock of the bank to be loaned to any
one person; that, if he would divide the loan, the bank would
carry it.    Mr. Bailey suggested that, if he would get his
brother, T. P. Tolbert to give the bank his (T. P. Tolbert's)
note for $9,500, the bank would renew the R. R. Tolbert
note for $10,000 and call off the sale of the cotton.    The
T. P. Tolbert note was renewed from time to time and
divided into two notes; one for $5,000 and the other for
$4,500.    Cotton went down, and was finally sold at a very
greatly reduced price.    Who sold the cotton is in dispute.
The bank claims that R. R. Tolbert sold it, and R. R. Tol-
bert claims that the bank sold it.    It is not denied that, if
the sale had been made when the bank first made its contract
to sell, it would have not only paid the $19,500, but would
have produced a comfortable surplus to have been paid over
to R. R. Tolbert.    When it was sold, the proceeds of sale
were insufficient to pay the R. R. Tolbert note for $10,000.
The bank applied the entire proceeds of sale to the R. R.
Tolbert note and brought this action against T. P. Tolbert
for the full amount of his notes.    R. R. Tolbert indorsed
the T. P. Tolbert notes.    R. R. Tolbert did not answer the
complaint.    T. P. Tolbert did answer, and set up that he
was a mere accommodation indorser, and that he signed the
notes with an agreement that the warehouse receipts would
be held by the bank as security, not only for the R. R. Tol-
bert note for $10,000, but as security for the two notes
signed by him (T. P. Tolbert), and that he was entitled to
a *pro rata* share of the proceeds of sale as a credit upon his
notes.

The presiding Judge, at the conclusion of the evidence,
directed a verdict for the plaintiff, and from the judgment

based upon this verdict this appeal is taken. The exceptions allege error in the exclusion of evidence:

I. T. P. Tolbert undertook to show that, in the transaction that culminated in his signing the notes, R. R. Tolbert was not only acting for himself, but as agent for the bank, and offered evidence as to the statement made to him by R. R. Tolbert that the bank had agreed to hold the warehouse receipts as security, not only for the R. R. Tolbert note, but as security for the T. P. Tolbert note. The bank objected, on the ground that parol evidence was inadmissible to vary the terms of the written contract. The objection was sustained and the evidence excluded.

The evidence was properly excluded. The object of the evidence was to show that the warehouse receipts which had been assigned to the bank alone, in writing, had by parol, been assigned to T. P. Tolbert. This was a clear violation of the rule. The exceptions that raise this question cannot be sustained.

II. The appellant complains that he was not allowed to show the true consideration of the note. The evidence did not tend to show the consideration of the note. It tended to show that an absolute promise to pay the debts of another, expressed in writing, was made conditionally. This is a hard case, and the defense is put in in all good faith and honesty, but it cannot be sustained. There is no dispute that R. R. Tolbert owed the bank too much money in proportion to its capital. The bank was required by law to reduce the amount of the loan to one man. When the bank examiner comes along, making an inspection for the protection of stockholders and depositors, he finds among the assets of the bank two notes, one for $10,000, secured by warehouse receipts for 156 Bales of cotton, and one of two notes for $9,500 by T. P. Tolbert. The official inspection would afford no protection, if the securities can be

shown by parol not to be what on their faces they purport to be.

III. The appellant complains that he was not allowed to show that R. R. Tolbert was acting as agent for the bank in procuring the signature of T. P. Tolbert to the notes sued upon. Whether R. R. Tolbert was the agent of the bank or not was a mixed question of law and fact. The facts being undisputed, it became a quesiton of law. The bank was proceeding to collect its money. The substitution of the new security was solely in the supposed interest of the debtor. The fact that the bank told the debtor that it would stop proceedings on certain conditions to be performed by the debtor did not make the debtor the agent of the bank.

The attorney's fees are not argued.

The judgment is affirmed.

MESSRS. JUSTICES WATTS and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN (dissenting): This is an action upon two promissory notes, made by the defendant T. P. Tolbert and indorsed by the defendant R. R. Tolbert, Jr. Both notes are dated December 30, 1921; one for $5,000 and the other for $4,500, both payable to the plaintiff bank on December 1, 1922. They are renewals, from time to time, of a note for $9,500, dated October 3, 1920, made by T. P. Tolbert to the bank, and indorsed by R. R. Tolbert, Jr.

This action, against both T. P. Tolbert and R. R. Tolbert, Jr., was commenced May 24, 1923, in the Court of Common Pleas for Greenwood County. R. R. Tolbert, Jr., made default. T. P. Tolbert made several defenses, only one of which it is deemed necessary to consider. It will sufficiently appear in what follows. The case was tried before his Honor, Judge Johnson, and a jury, at October term, 1923. At the close of all evidence, upon motion of the plaintiff, the presiding Judge directed a verdict in favor of the bank for the full amount claimed. Upon this verdict,

judgment has been entered, and from it the defendant T. P. Tolbert alone has appealed.

The $9,500 note, of which the notes sued upon are renewals, was made under the following circumstances:

On April 28, 1920, the defendant R. R. Tolbert, Jr., made a note to the plaintiff bank for $19,500, due June 5, 1920, and deposited as collateral security therefor warehouse receipts for 156 bales of cottos. T. P. Tolbert had nothing to do with this transaction at its inception. It does not distinctly so appear in the record for appeal, but it is assumed that R. R. Tolbert, Jr., renewed this note, when it fell due on June 5, 1920, to October 3, 1920.

Prior to this date, some time in the latter part of September, 1920, the bank notified R. R. Tolbert, Jr., that the note could be carried no longer in its then shape, for the reason that it was in excess of the legal limit fixed by the Federal Reserve Bank, and that it would have to be paid or materially reduced at its maturity. Not having had a satisfactory compliance by R. R. Tolbert, Jr., with this requirement, the bank proceeded to realize upon the collateral. They contracted to sell the cotton represented by the warehouse receipts to Cooper & Griffin of Greenville. Before the sale was consummated, however, an arrangement was made by which the sale was called off, and R. R. Tolbert, Jr., who was anxious to hold the cotton for better prices, was allowed an extension of the loan. The parties are not agreed as to the terms of this arrangement, and upon their differences the case turns.

W. T. Bailey, vice president and cashier of the bank, who handled the transaction, testified that on October 3, 1920, he was anxious to close the matter out, but that R. R. Tolbert, Jr., was insistent upon further indulgence, in the hope of a rising market; that R. R. Tolbert, Jr., asked him, "Will you carry it if I get Tom [the defendant T. P. Tolbert] to sign part of the note with me?" that he replied, "I will;" that he then prepared a plain bank note for T. P.

Tolbert to sign, for $9,500, payable December 3, 1920, and gave it to R. R. Tolbert, Jr., to be executed; that this note was returned to him by R. R. Tolbert, Jr., signed by T. P. Tolbert as maker, and indorsed by R. R. Tolbert, Jr.; that he credited the $19,500 note with "cash $9,500" (which in reality was the T. P. Tolbert note), leaving $10,000 due by R. R. Tolbert, Jr., on the original note, secured by the warehouse receipts.    The bank contends that thereafter the warehouse receipts stood as collateral for the $10,000 balance on the $19,500 note, alone, and that they had no security at all for the $9,500 T. P. Tolbert note, except his financial ability and R. R. Tolbert, Jr.'s, indorsement, a position quite unusual, which will be explained by the sequel.

On the other hand, the defendant T. P. Tolbert offered the testimony of R. R. Tolbert, Jr., tending to show that, at the time the above arrangement was consummated, there was a parol agreement between him and the bank that, in the event T. P. Tolbert made a note for part of the debt, the warehouse receipts should stand as security for that note, as well as for the $10,000 balance on the original note; that he explained this to T. P. Tolbert, and that he signed the note, relying upon this representation.

Upon the trial, objection was made to this testimony, upon the ground that its introduction would violate the well-known parol evidence rule.    The objection was sustained.

In May, 1921, apparently by concert of action between the bank and R. R. Tolbert, Jr., the cotton represented by the warehouse receipts was sold, and the proceeds were applied to the balance of $10,000, due upon the $19,500 note. They were not sufficient to pay that balance.    The bank now claims, not only this balance, but the entire amount of the $9,500 T. P. Tolbert notes; no part of said proceeds having been applied to them.

The defendant T. P. Tolbert claims that, if the parol contract which he offered to prove, namely, that in the event he should make the $9,500 note, the warehouse receipts should

stand as security for it, as well as the balance of $10,000, should be established, the proceeds of sale should have been applied ratably to the two obligations, reducing his liability to practically 50 per cent.    This is the main defense set up by the defendant T. P. Tolbert, and it is the only one that it is deemed necessary to consider.

At the maturity of the $9,500 note, in December, 1920, it was renewed by T. P. Tolbert from time to time; the last renewal being the two notes sued upon in this action, dated December 30, 1921, the $9,500 note having been split up into these two notes.    These renewals, it will be observed, ·were made after the bank had sold the cotton and applied the proceeds to the balance of $10,000 on the original note, whether with the knowledge of T. P. Tolbert, or not, the record does not show.

The presiding Judge ruled that the testimony offered as evidence of an agreement between the bank and R. R. Tolbert, Jr., at the time it was proposed that T. P. Tolbert should sign a note for a part of the debt, to the effect that, in that event the original collateral would stand for the new note, as well as for the balance of the old one should be excluded, upon the ground that its introduction would violate the parol evidence rule.    It is not clear from the record whether the presiding Judge intended to hold that the testimony was inconsistent with the terms of the original note or of the accommodation notes of T. P. Tolbert.    It will therefore be necessary to consider the case from both angles.

I apprehend, though it does not distinctly so appear, that the present contention grows out of the fact that R. R. Tolbert, Jr., cannot be made to respond to a judgment, and that T. P. Tolbert can.    It was therefore to the interest of the bank to consider the collateral as security for the balance due on the original note, $10,000, alone, and to hold T. P. Tolbert for the full amount of his accommodation note. Likewise, it was to the interest of T. P. Tolbert to consider the collateral as security for both, so that the proceeds should

be applied *pro rata.* I will therefore consider separately the admissibility of the proposed evidence as affecting the original note of $19,500 and the accommodation notes aggregating $9,500 referring to the first as the "old note," and to the second as the "new notes," for convenience.

As to the old note: Here was a note for $19,500, executed June 5, 1920, due October 3, 1920. It was in the form of a bank collateral note and expressed upon its face the assignment of warehouse receipts for 156 bales of cotton as collateral security. The bank was uncomfortable as to the status of the loan. Considering its capital stock and surplus, $19,500 was in excess of the legal limit to a single individual. The bank insisted, not upon payment of the loan, but upon a change in its form that would pass muster with the national bank examiner. It was not uneasy as to the security; the cotton was worth more than the note. R. R. Tolbert, Jr., was hopeful of a rise in the price of cotton and did not want to liquidate. Under the circumstances, the arrangement was proposed by one or the other, they disagree which, that the loan should be extended, carrying the cotton, upon the execution by T. P. Tolbert of a note for $9,500, indorsed by R. R. Tolbert, Jr., and credited upon the note. The question is: Is parol evidence, to the effect that, upon consummation and in consideration of this arrangement, it was agreed that the accommodation note should have the benefit of the collateral already pledged, admissible, or does such evidence violate the rule which forbids parol evidence, tending to contradict, vary, or add to the written instrument?

This Court has often recognized the force and wisdom of the rule which, after parties have solemnly incorporated the terms of their agreement in a written instrument, forbids the introduction of parol evidence of contemporaneous agreements, which have a tendency to contradict, vary, or add to those terms. The rule, of necessity, applies to the essential elements of the agreement which the parties in-

tended to crystallize into the writing.    It does not extend to the formal, unessential features of the contract writing, nor to independent agreements which do not contradict, vary, or add to the contract, and which are not inconsistent with it, nor to subsequent agreements upon a valuable consideration, of which the written contract forms the basis. *Knighton v. Des Portes Co.,* 119 S. C., 340; 112 S. E., 343.

In my opinion, the parol evidence was admissible to establish an agreement entered into between the parties, subsequently to the execution of the old note, with the old note as a basis, sustained by a valuable consideration.    It did not purport to vary the terms of the old note, as it was originally executed, except to withdraw from it collateral security equivalent to the amount the old note was reduced by crediting the new note upon it.    That the parties had the right and power, by parol, to make any agreement touching an existing written contract that they desired, I think, is abundantly sustained by the authorities everywhere.

"The rule forbidding the admission of parol or extrinsic evidence to alter, vary, or contradict a written instrument does not apply so as to prohibit the establishment, by parol of an agreement between the parties to a writing, entered into subsequent to the time when the written instrument was executed, notwithstanding such agreement may have the effect of adding to, changing, modifying, or even altogether abrogating, the contract of the parties as evidenced by the writing; for the parol evidence does not in any way deny that the original agreement of the parties was that which the writing purports to express, but merely goes to show that the parties have exercised their right to change or abrogate the same, or to make a new and independent contract." 22 C. J., 1273.

"All distinct and separate transactions may therefore be established and availed of whenever they are themselves valid.    Now, a transaction subsequent in time must always be a separate transaction.    The rule of exclusion can only

apply to negotiations contemporaneous in time, or prior, but incomplete. * * * Any subsequent agreement altering, waiving, discharging, or otherwise novating a prior transaction, is not excluded by reason of the prior transaction having been reduced to writing." 4 Wig. Evid. (1st Ed.) § 2441.

The learned author quotes the following from *Goss v. Lord Nugent,* 5 B. & Ad., 58:

"By the general rules of the common law, if there be a contract which has been reduced into writing, verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made or during the time that it was in a state of preparation, so as to add to or subtract from, or in any manner to vary or qualify, the written contract; but after the agreement has been reduced into writing it is competent for the parties, at any time before the breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to, or subtract from, or vary or qualify, the terms of it, and thus to make a new contract."

In *Moseley v. Witt,* 79 S. C., 141; 60 S. E., 520, the plaintiff sued for the specific performance of a contract for the sale of land. The Court said:

"The main issue of fact was made by the allegation of the answer, that in the autumn of 1903 the contract of sale was canceled by parol, and an unconditional rent contract made by plaintiff for the year 1904. * * * We think the defendant has shown, by the preponderance of the evidence, that the contract of sale was rescinded and a rent contract substituted. A written contract of sale may be rescinded and a rent contract substituted by parol"—cited in *Manufacturing Co. v. Pickens,* 96 S. C., 286; 80 S. E., 484, in an opinion by Mr. Justice Fraser. *Lewis v. Cooley,* 81 S. C., 461; 62 S. E., 868, and *Ray v. Counts,* 82 S. C., 555; 64 S. E., 1135.

That the terms of a written contract may be shown to have been changed by a subsequent parol agreement, see the unbroken line of authorities cited in Volume 10, Second Decennial Digest, under the title "evidence." As is said in the case of *Rowland v. Biesecker,* 185 Fed., 515; 107 C. C. A., 615, the rule that a written contract may not be varied collaterally applies only to the negotiations which finally take form in the written contract itself, and does not affect a subsequent transaction between the parties, although oral. And in *Simone v. Kirschner,* (Conn.), 124 Atl., 20 (June, 1924) :

"The parol evidence rule is inapplicable to establishment of an agreement between the parties entered into subsequently to time of execution of the instrument, though changing the contract evidenced by the writing, since it tends to prove a new agreement."

See, also, *Innis v. Boller,* 97 Okl., 76; 222 Pac., 553 (April, 1924). *Webb v. Lawson,* 94 Okl., 162; 221 Pac., 413. *Rash v. Shower* (C. C. A.), 288 Fed., 819. *Irwin v. Buchanan* (C. C. A.), 289 Fed., 348. *Thompson v. Short,* 157 Ark., 314; 248 S. W., 263. *Lane v. Central Co.,* 183 N .C., 307; 111 S. E., 344. *Hooke v. Lumber Co.,* 54 Cal. App., 681; 202 Pac., 492. *Dike v. Martin,* 85 Okl., 103; 204 Pac., 1106. *Latham v. Kistler;* (Tex. Civ. App.), 235 S. W., 938. *Overstreet v. Meritt,* 186 Cal., 494; 200 Pac., 11. *Scheimer v. James,* 53 Cal. App., 207; 199 Pac., 827. *Johnson v. Burnham,* 120 Me., 491; 115 Atl., 261. *Prudden v. Stipp.,* 76 Pa. Sup. Ct., 530. *Morrison v. Jackson,* 17 Ala. App., 338; 85 South., 573. *Dewberry v. Furst,* 146 Ark., 26; 225 S. W., 294. *Barnes v. Early,* (Tex. Civ. App.), 228 S. W., 248. *Tube Co. v. Slattery,* 109 Atl. (Pa.), 695. *Ware v. Fairbanks,* (Tex. Civ App.), 217 S. W., 211. *Porter v. Carney,* 186 Iowa, 424; 172 N. W., 644. *Gilman v. Mach. Co.,.*232 Mass., 573; 122 N. E., 747. *Williams v. Bruce,* 110 S. C., 421; 96 S. E., 905. *Lefebure v. Lord,* (Iowa), 167 N. W., 651.

*Acme Mfg. Co. v. McCormick,* 175 N. C., 277; 95 S. E., 555, L. R. A., 1918F, 572.   *Keeley v. Erbe,* 33 Cal. App., 267; 164 Pac., 906.   *Ross v. Moore,* (Tex. Civ. App.), 191 S. W., 853.

"By  specific agreement made at the time of the delivery of the collateral, or subsequently, the pledgor may consent that property pledged as security for a particular debt shall be held by the pledgee as security for other obligations already existing or to be thereafter transacted."   31 Cyc., 821.

In *Fripp v. Fripp,* Rice. Eq., 84, the Court said:

"Though property once legally vested cannot be retransferred without a conveyance, yet an agreement may be rescinded by parol, or by an act significant of the intention."

As to the new notes:   In the first place the question whether the evidence of the parol agreement tended to contradict, alter, or vary the terms of the new notes is practically settled by the admissibility of the evidence tending to establish the parol agreement relating to the old note, for the execution of the new note was a part of that agreement. It would be illogical to hold that the agreement could be established, and yet could not affect the very subject of that agreement.   But, aside from that view and assuming that there was no old note, parol evidence tending to show that when the new note was executed the bank agreed that collateral, then in its hands as security for another note, should, with the consent of the owner of the collateral, stand as security for it, as well as for the other note, it was clearly admissible, as I shall endeavor to show.

The alleged agreement that the collateral should stand security for the $9,500 note, as well as for the balance of the $19,500 note after crediting it with the $9,500 note, was made by R. R. Tolbert, Jr., with the bank, as he proposed to prove.   While not made directly with T. P. Tolbert, it is clear that, having been made for his benefit, and acted upon by him to his detriment, he may be allowed the benefit

of it.. *Butler v. Telegraph Co.,* 62 S. C., 222; 40 S. E., 162; 89 Am. St. Rep., 893.

Assuming it to be true that the bank, in order to subserve its purpose to escape criticism of the bank examiner, by splitting the $19,500 note into two obligations, apparently of different persons, or to accommodate R. R. Tolbert, Jr., obtained the note of T. P. Tolbert upon a verbal agreement with it, as well as the balance due upon the old note, should be secured by the original collateral, its repudiation of that agreement either by denial or testimonial objection would be a gross perversion of justice, and it would require the most compelling authorities to receive my sanction.   I do not, of course, prejudge the establishment of such an agreement, for in fact the bank denies it.   In answer to the question, "Did his note (referring to T. P. Tolbert's note) have any connection with R. R. Tolbert's cotton?"   Mr. Bailey testified, "No, sir; it never has."   I feel satisfied that, if T. P. Tolbert had become involved and the cotton had been sufficient to pay both notes, the positions of the bank and R. R. Tolbert, Jr., would have been reversed.   If the bank be allowed to give its version of the matter, I see no reason for denying to T. P. Tolbert the same privilege.

Unless there was some consideration for the $9,500 T. P. Tolbert note, it was *nudum pactum.*   What that consideration was, the defendant, as well as the plaintiff, had the right to show.   The plaintiff says that the consideration was an extension of credit to R. R. Tolbert, Jr., upon his note of $19,500, or promise on the bank's part to "carry" R. R. Tolbert, Jr.'s, cotton, althoug it does not appear that any written evidence of such extension and promise was produced or made.   In fact, the attorneys for the bank state in their printed argument: "The big note, which had been reduced by the credit, was carried on as a past-due obligation."   If so, there was nothing to prevent the bank from foreclosing its collateral upon the very day that T. P. Tolbert gave the $9,500 note, and the note would be left

without any consideration whatever. If the bank was al-lowed to enter upon its conception of the consideration for that note, why should T. P. Tolbert not have been allowed to do so with the same kind of evidence—parol? It may be that the admitted promise of the bank to "carry" R. R. Tolbert's cotton could be construed as a promise to carry it a reasonable time, and therefore thus furnish a sufficient consideration for the T. P. Tolbert note, but such promise was admittedly in parol, which the bank was allowed to state. Then, if in parol, should T. P. Tolbert not have been allowed to give his version of the matter? He contends that the bank had agreed with R. R. Tolbert, Jr., to extend the loan, to carry the cotton, and that the cotton should stand as security for both notes; that such was the representation made by R. R. Tolbert, Jr., to him, and upon the faith of it he had given the note; and that when R. R. Tolbert, Jr., returned with the note to the bank he notified the bank of the condition upon which T. P. Tolbert had given the note. All of this proposed testimony was excluded.

I think that there are substantial reasons why the evidence was admissible. In the first place, such an agreement com-municated to T. P. Tolbert and acted upon by him (as the proposed evidence tends to show) was necessarily a sub-stantial inducement for him to make an accommodation note. The cotton at that time was worth more than the $19,500 debt, and the assurance that it would stand as security for the accommodation note was practically an indemnity against loss, certainly for not more than the decline of cot-ton would produce. It was therefore a moving considera-tion in favor of T. P. Tolbert which induced the obligation.

It is settled that the consideration of a contract may al-ways be inquired into. *Groesbeck v. Marshall,* 44 S. C., 544; 22 S. E., 743. *McGrath v. Barnes,* 13 S. C., 328; 36 Am. Rep., 687. *Whitman v. Corley,* 72 S. C., 410; 52 S. E., 49. *Latimer v. Latimer,* 53 S. C., 483; 31 S. E., 304. *Knighton v. Des Portes,* 119 S. C., 351; 112 S. E., 343.

*Curry v. Lyles,* 2 Hill, 404.    *Rawls v. Insurance Co.,* 97 S. C., 203; 81 S. E., 505.    *Stalnaker v. Tolbert,* 121 S. C., 440; 114 S. E., 412.    As the notes state only a formal consideration, the entire consideration could be established either by parol or by writing.

"But when the note expresses no consideration, or a merely formal or general consideration, as by the usual words 'value received,' or by similar general or formal expressions, it is evident that, if the true consideration of the note rests in an agreement, written or oral, ·between the parties, the proof of such agreement does not necessarily tend to change the terms of the note, although by showing the true consideration upon which it was given it may control the recovery upon the note."    *McGrath v. Barnes,* 13 S. C., 328; 36 Am. Rep., 687.

In *McGrath v. Barnes,* 13 S. C., 328; 36 Am. Rep., 687, it is said:

"*Knight v. Knotts,* 8 Rich., 35, finally settled the question by placing the defense upon the true ground, namely, as involving the consideration of the note.    The verbal agreement accompanying the note was held to be the consideration of the note, the two constituting but one agreement, and when the contract failed to give support to the note the latter could not justify a recovery."

In *Willis v. Hammond,* 41 S. C., 153; 19 S. E., 310, the Court held:

"While it is a general rule that a contract in writing, complete in all its terms, draws into it all parol contracts preceding it, yet, if it fails to state the consideration, if it uses terms that need explanation to be understood and applied, or if it is only a part of a general whole, it is perfectly competent to supply all these missing qualities by testimony giving all the precedent agreements of the parties."

In *Whitman v. Corley,* 72 S. C., 410; 52 S. E., 49, the Court held:

"Where a deed expresses a certain valuable consideration, an additional or a different valuable consideration may be proved by parol."

In *Sykes v. Everett,* 167 N. C., 600; 83 S. E., 585; 4 A. L. R., 751, the payee of a note secured by collateral, indorsed the note and transferred the collateral, under an agreement in parol with the indorsee that the collateral should be first exhausted before his liability as indorser would attach. It was held that the parol agreement was valid and enforceable. In addition to this, the rule is stressed over and over again, in this State and elsewhere, that if the writing does not contain all the terms of the agreement parol evidence may supply the missing element.

"The rule in this State is, where the writing does not contain all the terms of the transaction between the parties, parol evidence which does not contradict or vary the writing may be admissible to show a contemporaneous independent and collateral agreement." *Paint Co. v. Bennett-Hedgpath Co.,* 85 S. C., 486; 67 S. T., 738.

In *Martin v. Bank,* 92 S. C., 226; 75 S. E., 404, it was held that parol evidence, to the effect that if a bank would discount a customer's note he would pay the proceeds of a damage claim, then pending, upon the note, when such claim should be collected, did not violate the parol evidence rule and was properly received.

Evidence of a separate oral agreement between the parties to a written instrument as to matters on which the contract is silent, if it does not tend to vary or contradict the terms of the writing, is admissible. *Canfield Co. v. Kint Co.,* 148 Iowa, 207; 127 N. W., 70. *Wehnes v. Roberts,* 92 Neb., 696; 139 N. W. 212, Ann. Cas., 1914A, 452. *National Co. v. Healy,* 189 Fed., 49; 110 C. C. A., 613. *Murphy v. Schnell,* 248 Ill., 182; 93 N. E., 738. *Woodson v. Beck,* 151 N. C., 144; 65 S. E., 751; 31 L. R. A. (N. S.), 235. *Lavalleur v. Hahn,* 152 Iowa, 649; 132 N. W., 877; 39 L. R. A. (N. S.), 24. *Faux v. Fitler,* 223 Pa. 568; 72

Atl., 891; 132 Am. St. Rep., 742.   *Croyle v. Cambria Co.,* 233 Pa., 310; 82 Atl., 360.   *DeRue v. McIntosh,* 26 S. D., 42; 127 N. W., 532.   *Williams v. Salmond,* 79 S. C., 459; 61 S. E., 79.

"Parol evidence is admissible to show an independent agreement made as an inducement to a written contract, notwithstanding the written contract contains no reference to such agreement."   *Lee v. Bank* (Tex. Civ. App.), 254 S. W., 394.

In *Clinch Co. v. Willing,* 180 Pa., 165; 36 Atl., 737; 57 Am. St. Rep., 626, it is held that (quoting syllabus) :

"Parol evidence is admissible to show a contemporaneous agreement at the time of the making of a note secured by mortgage that the security should first be exhausted before proceeding against the maker on his note."

In *Knight v. Knotts,* 8 Rich., 35, it was held that, in an action upon a note for the hire of a slave, it was admissible by parol to show the terms of the contract of hiring.   In *Kaphan v. Ryan,* 16 S. C., 352, the Court said:

"This is not a case in which such testimony [parol] tends to vary the terms of a written instrument, but to show the whole agreement in which the instrument originated, and of which it constitutes only a part.   It is said in 1 Greenl. Evid. § 284a, that the rule does not apply to the admission of parol evidence 'in cases where the original contract was verbal and entire, and a part only was reduced to writing.' " —citing *Knight v. Knotts,* and other cases.

In *Moffatt v. Hardin,* 22 S. C., 9, parol evidence was allowed to prove that a certain note and mortgage sought to be foreclosed had been signed under certain representations made by the mortgagee at the time of execution.   The Court said:

"Nor do we regard this testimony as inadmissible, on the ground that it tended to vary the terms of the written instruments.   The purpose, manifestly, was not to vary the

ment of the parties as to the payment of freight.    Mr. Wigmore, in 4 Wig. Ev. (1st Ed.) § 2430, says:

"The most unusual controversy arises in cases of partial integration; i. e., where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form.    Here, obviously, the rule against disputing the terms of the document will be applicable to so much of the transaction as is so embodied, but not to the remainder."

"It is very distinctly laid down that, while as to third parties a mortgage cannot be extended to cover new debts, yet this may be done by parol amongst the parties themselves, even when the mortgage is one created in the usual way by deed."    *Walker v. Walker,* 17 S. C., 329.

In addition to this, it is universally held that parol evidence is admissible to establish an independent and collateral agreement not inconsistent with the writing.

In *Chemical Co. v. Moore,* 61 S. C., 166; 39 S. E., 346, the plaintiff sued upon a written contract for the sale of certain fertilizers to the defendant.    The defendant set up a counterclaim for damages, in the breach of an agreement entered into verbally at the time of the execution of the contract, that the defendant should be the sole agent for the sale of the plaintiffs' fertilizers at a certain place during a certain season, and that none of the plaintiff's goods would be sold or shipped to any other person at that point or in the vicinity thereof.    The Court held that parol evidence of such agreement should have been received, saying:

"The testimony ruled out was offered, not for the purpose of impairing, altering, or in any way, otherwise, interfering with the written contract upon which the plaintiff based its claim, but solely for the purpose of showing that, by reason of the breach by the plaintiff of another, distinct and independent agreement, the plaintiffs had become liable to pay the defendants the damages alleged in the answer."

terms of the papers, but to explain the uses to be made of them and the conditions of their existence."

In *Williams v. Salmond*, 79 S. C., 459; 61 S. E., 79, parol evidence was allowed to prove an independent agreement by the landlord to make certain repairs upon land covered by a written lease, which made no mention of such agreement. The Court said:

"The two contracts are separate in their nature, in nowise inconsistent with each other, and one may be in writing and the other parol. The written lease, therefore, was no obstacle to the setting up and proving the distinct and separate agreement to put the place in repair and build new houses."

In *Sparks v. Green*, 85 S. C., 109; 67 S. E., 230, parol evidence was allowed to show that a bill of sale of a house was not merely collateral to the agricultural lien debt, but was intended to secure the account generally to a certain amount. In *Ashe v. C. & N. W. R. Co.*, 65 S. C., 134; 43 S. E., 393, the Court said:

"When the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible, for the purpose of showing a contemporaneous independent agreement entered into between the parties."

In *Brick v. Brick*, 98 U. S., 514; 25 L. Ed., 256, it is held, quoting syllabus:

"The rule which excludes such [parol] evidence to contradict or vary a written instrument does not forbid an inquiry into the object of the parties in executing and receiving it."

In *Bennettsville Co. v. Gray*, 90 S. C., 454; 73 S. E., 872, it was held that a party to a contract may prove any part thereof not contained in the writing, which does not vary or contradict it.

In *Buist v. Lancaster Co.*, 68 S. C., 523; 47 S. E., 978, it was held that, where an order for goods was silent as to freight, parol evidence was admissible to show the agree-

In *Earle v. Owings,* 72 S. C., 362; 57 S. E., 980, it is held, quoting syllabus:

"Parol evidence is admissible to show the object or purpose with which parties execute an instrument, and that which does not really contradict or vary a written instrument is admissible for the purpose of showing a contemporaneous collateral, and independent agreement,"—citing *Moses v. Hatfield,* 27 S. C., 324; 3 S. E., 538. *Brick v Brick,* 98 U. S., 514; 25 L. Ed., 256.

In *Davis v. R. Co.,* 81 S. C., 466; 62 S. E., 856, it was held that, where the written contract of shipment was silent as to the route, parol evidence was admissible to show an agreement to ship over a certain route. See, also, *Easton v. Woodbury,* 71 S. C., 250; 50 S. E., 790. *Senterfeit v. Shealey,* 71 S. C., 259; 51 S. E., 142.

In *Holliday v. Pegram,* 89 S. C., 73; 71 S. E., 367, Ann. Cas., 1913A, 33, it was held that where the rent contract was silent as to repairs parol evidence was admissible to show that the landlord, as a part of the consideration of the contract, agreed to make certain repairs—citing, to the same effect, *Williams v. Salmond,* 79 S. C., 459; 61 S. E., 79.

The collateral was already in pledge to the bank. At the same time R. R. Tolbert, Jr., had a substantial interest in it; therefore neither he nor the bank, alone, could have extended the collateral to the security of the T. P. Tolbert note. By their concurrent action, however, if the agreement be admitted, the extension of the collateral may have been made to cover the latter note. All that could possibly stand in the way of such an agreement would be the statute of frauds, and that has no application to agreements for the hypothecation of personal property.

"A renewed assignment or continued hypothecation of a thing in action, already in the possession of the assignee by virtue of a previous written assignment, is valid, though made by parol; especially where the consideration is the

incurring of a future and contingent debt. The statute of frauds does not apply to such a case." *Hoyt v. Hoyt,* 21 N. Y. Super Ct., 511; 27 C. J. 236.

"Statutes requiring chattel mortgages to be in writing * * * have no application to a pledge." *American Co. v. German,* 126 Ala., 194; 28 South., 603; 85 Am. St. Rep., 21. *Dale v. Pattison,* 234 U. S., 399; 34 Sup. Ct., 785; 58 L. Ed., 1370; 52 L. R. A. (N. S.), 754.

Comparing the line of cases represented by *Chemical Co. v. Moore,* 61 S. C., 166; 39 S. E., 346, with that represented by *Stalnaker v. Tolbert,* 121 S. C., 437; 114 S. E., 412, I think that the following may be considered as the law of this State:

1. When the writing does not contain the entire agreement between the parties, a case of partial integration, as Mr. Wigmore expresses it, parol evidence of the omitted part is admissible, provided it be consistent or not inconsistent with the writing.

2. Where there was an independent collateral agreement, not inconsistent with the writing, parol evidence of it is admissible.

3. Where the consideration of the contract rests in an agreement, written or oral, or both between the parties, parol evidence is admissible to establish it, although by showing the true consideration a recovery upon the contract may be controlled.

It hardly seems necessary to discuss the proposition that an agreement to give collateral security, or to allow certain collateral to stand as security to a note, does not vary or contradict the terms of the note. Certainly, if T. P. Tolbert had agreed to give collateral to the note, or even to secure it by a mortgage of real estate, the agreement could have been enforced, and a similar agreement by the payee of the note would stand upon the same footing. As is said in *Stalnaker v. Tolbert,* 121 S. C., 437; 114 S. E., 412:

"Enforcement of the right of action upon the note after maturity was entirely consistent with the alleged promise to hold the note as security to the past-due account."

Conversely it would appear that the agreement to hold the note as security to the account would be entirely consistent with the account. I think, therefore, that the Circuit Judge erred in excluding evidence of the alleged agreement that, in consideration of the execution of the note by T. P. Tolbert, the bank agreed that the collateral in its hands should stand as security for both notes; that such evidence was admissible, and that it was not obnoxious to the parol evidence rule as affecting either the original note or the new note.

In the case at bar, if the bank still held the collateral, the fact that it stood for both notes would not be a defense in the present action upon the T. P. Tolbert note. *Stalnaker v. Tolbert,* 121 S. C., 437; 114 S. E., 412. T. P. Tolbert would be liable upon his note and could afterwards make use of the collateral by way of partial reimbursement. But it appears that the collateral has been realized upon and the entire proceeds applied to the $19,500 note, or rather to the balance due upon it of $10,000. Under such circumstances, to pervent the necessity of another action by T. P. Tolbert against the bank, I think that, in the event of the establishment of such agreement, provided it has not been waived by T. P. Tolbert, he would be entitled to a credit upon his note of a *pro rata* application of the proceeds of the sale of the cotton. In *Reynolds v. Vint,* 73 Or., 528; 144 Pac., 526, it is said:

"An accommodation maker, known to be such by the payee of the note, is entitled to the rights of a surety, and a release by the holder of a note of a security given by the principal debtor releases the accommodation maker *pro tanto.*"

See also *Montague v. Stelts,* 37 S. C., 200; 15 S. E., 968; 34 Am. St. Rep., 736.

I do not think that Section 16 of the Negotiable Instruments Law (28 St. at Large, p. 672), allowing parol evidence of a condition, has any application to this case, and have not, therefore, discussed it.

No point appears to have been made in the case of the fact that, after the sale of the cotton, and the application of the proceeds to the $10,000 balance due on the R. R. Tolbert, Jr., note of $19,500, T. P. Tolbert made one or more renewals of his note. The question, therefore, of a possible waiver on his part of his claim that a proportionate amount of the proceeds should have been applied to his note has not been considered.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.