BRICK v. BRICK.

1. Parol evidence is admissible in equity to show that a certificate of stock issued to a party as owner was delivered to him as security for a loan of money. A court of equity will look beyond the terms of an instrument to the real transaction, and when that is shown to be one of security and not of sale, it will give effect to the actual contract of the parties.
2. The rule which excludes such evidence to contradict or vary a written instrument does not forbid an inquiry into the object of the parties in executing and receiving it.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. W. B. Webb* for the appellant.
*Mr. Joseph H. Bradley* for the appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

In 1864, between the 7th and 27th of September, the appellant, Samuel R. Brick, a resident of Philadelphia, purchased eight hundred and ninety-two shares of stock in the Washington Gas-light Company, a corporation existing in the District of Columbia, charted by Congress, paying for the same $17,277. Of this stock, two hundred and fifty shares were afterwards transferred by his direction on the books of the company to his brother, Joseph K. Brick, a resident of Brooklyn, N. Y., to whom a certificate was issued and from whom a check for $5,250 was received. The question presented is whether this transaction between the brothers was a sale of the stock, or a loan of money on its pledge. Joseph K. Brick is dead, and the evidence as to the character of the transaction is conflicting, as is generally the case when the object of parties in the execution of instruments is not expressed in writing, and is sought years afterwards to be shown by parol. But notwithstanding such conflict, there are certain facts established, indeed not controverted, which must control our judgment.

In the first place, it appears that in September, 1864, the appellant was anxious to purchase stock in the gas company. He had become acquainted with its affairs, and knew that it intended to apply to Congress for power to increase its capital,

and was convinced that with such increase the value of the stock would be greatly enhanced. He expressed this conviction in letters to his son, which the complainants produced; and, acting upon it, he purchased to an extent beyond his means of immediate payment, and gave his note for a portion of the purchase-money.

In the second place, the appellant applied to his brother, Joseph, for a loan of money, at the time he was expressing his anxiety to buy the stock of this company, and his brother replied that the money could be raised on call. It was not many days afterwards when a check for the $5,250 was sent.

In the third place, in May and July, 1866, Joseph stated, under oath, that he was not the owner of the stock. In the previous year he had given to the board of assessors of Brooklyn a statement of his personal property, in which he had specified the stock of the gas-light company, valuing it at $5,000, and was accordingly assessed upon it. In May, 1866, he made oath that he had been thus erroneously assessed, and that the error had arisen from his having inserted in the statement the stock held by him for his brother, in which he had no pecuniary interest. The assessment was accordingly corrected. On the same day, he wrote to his brother what he had done, saying that he had told the assessors he held the stock for the latter's benefit, and requesting him to advise the president and secretary of the company that such was the case. And in the statement of his personal property for that year, made in July following, he omitted the stock in question, and verified the statement with his oath that he had no personal property not included in it.

So far from questioning the character of this testimony, the complainants refer to it in their bill, annex copies of the oaths taken, and observe that the stock was purchased to aid Samuel in some matters of business, and was often spoken of as his, though not so in fact, but that being unproductive, the oaths were made by Joseph in order to get rid of the tax assessed against him and make Samuel pay it, as if this circumstance could possibly extenuate what, if not true, was simple perjury.

This bill is signed by the widow of the deceased, and the

suit is prosecuted by her and the executors of his will; but we do not think that the evidence in the case justifies the reproach they would cast upon his name and character. There are casual observations made by him, sometimes in loose conversation, mostly in friendly letters, which, unexplained, would indicate that he was owner instead of mortgagee of the stock, expressions not at all unnatural where one holds the absolute title to property; but there is nothing in them which overcomes the weight of his affirmation under oath, supported as that is by all the attendant circumstances.

We are satisfied that the certificate of the two hundred and fifty shares was issued to the deceased as security for a loan, and not upon a purchase. It is competent to show by parol what the transaction was. In the late case of *Peugh* v. *Davis* (96 U. S. 336), we stated the doctrine of equity on this subject, where an instrument was in form a conveyance, but was in fact intended as a security; and though the instrument there was a deed of real property, the principle applies when the instrument purports to transfer personal property. A court of equity, we there said, "looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in such cases will be considered by a court of equity; it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression and to promote justice." *Hughes* v. *Edwards*, 9 Wheat. 489; *Russell* v. *Southard*, 12 How. 139; *Taylor* v. *Luther*, 2 Sumn. 228; *Pierce* v. *Robinson*, 13 Cal. 116.

As in our opinion the appellant is the owner of the stock in question, and his brother held it merely as collateral security for the $5,250 loaned, it is unnecessary to consider what, if any, effect is to be given to the decree obtained in the former case of Samuel Brick against the executors of the deceased. Assuming that the District Court never acquired jurisdiction over the executors resident in the State of New York, the situation of the parties remains as previously; and upon payment of the loan with interest, after proper credits for the dividends received, the appellant will be entitled to the possession of the certificate. The present suit proceeds upon the theory that the stock belongs to the estate of the deceased, and is not held as security. It seeks to enforce a claim of ownership to the property, and not the payment of the loan by its sale.

The decree must, therefore, be reversed, with directions to the court below to dismiss the bill; and it is

*So ordered.*