### AUTEN v. CITY ELECTRIC ST. RY. CO. et al.

(Circuit Court, E. D. Arkansas, W. D. October 25, 1900.)

1. MORTGAGES—DEED TO THIRD PERSON AS TRUSTEE—STATUTE OF FRAUDS.

Property was conveyed by an absolute deed to a grantee, who was designated in the deed as "trustee." The conveyance was in fact made as a mortgage to secure an indebtedness to a third party, and such fact was admitted by the grantee. *Held,* that the debtor could not invoke the statute of frauds to invalidate the deed or to defeat the trust thereby created, on the ground that the deed failed to disclose the object of the trust or the beneficiary, but that the true nature and purpose of the transaction could be shown by the creditor by parol, in the absence of any objection by the grantee, who held the legal title, and was alone entitled to plead the statute.

2. SAME—CORPORATIONS—EQUITABLE ESTOPPEL.

A street-railroad company from time to time purchased and paid for tracts of real estate, which it caused to be conveyed to individuals, the grantees being designated in the deeds as "trustee," but without stating for whom they were trustees or the nature of the trusts. Subsequently, at the request of a bank, to which the company was largely indebted, and

which had knowledge of all the facts, the persons holding the naked legal title to such property, one of whom was the manager and owner of practically all of the stock of the company, conveyed the same to a third person as security for the company's indebtedness to the bank, in reliance on which such indebtedness was extended, and further credit given the company. *Held*, that the fact that no formal action was taken by the directors of the company authorizing the conveyances would not defeat the equitable right of the bank to enforce the security, the company, which was the beneficial owner of the property, having received the entire benefit thereof.

3. DEEDS—CONVEYANCES BY HOLDER OF NAKED LEGAL TITLE—STATUTE OF USES.
The statute of uses does not apply so as to render a conveyance from the equitable owner of property necessary to pass the title, where the legal title is held by another as trustee, by a deed which does not disclose the equitable owner.

4. RECEIVERS—TITLE TO PROPERTY—CLAIMS OF THIRD PERSONS.
The rights of receivers for a corporation in respect of its property are no greater than those of the corporation, and they take such property subject to all claims or defenses which could have been asserted against the corporation.

In Equity. Suit by the receiver of a bank to foreclose deeds alleged to have been given as mortgages.

H. F. Auten, receiver of the First National Bank of Little Rock, Ark., filed two bills to foreclose deeds alleged to be mortgages executed to Nick Kupferle for the benefit of the bank. The Atlantic Trust Company intervened, and also filed cross bills, claiming a prior lien on the realty in controversy by virtue of a general mortgage executed to it by the street-railway company to secure an issue of $300,000 of bonds. By consent, the two cases were consolidated, and at the hearing it was conceded that the trust company's mortgage did not include any of the lands sought to be foreclosed in this proceeding, and that its cross bill should be dismissed. For convenience the complainant will be referred to as the "Bank," and the defendant as the "Street-Railway Company."

The facts, as found by the court, are: "The street-railway company was a corporation existing under the laws of the state of Arkansas, operating electric street cars in the city of Little Rock. A large majority of its stock was owned by Horace G. Allis, who was its president and general manager. The board of directors consisted of his friends, selected by him, who gave but little, if any, attention to the management of the corporation, leaving that entirely to him. Afterwards Allis, having been elected as president of the First National Bank of Little Rock, resigned as president of the street-railway company, but continued to act as its manager, retaining absolute control of all its affairs. The directors attended no meetings, except when called together by Allis, and then only ratified such resolutions as were prepared by Allis and submitted to them by him. At times proceedings of meetings which were never held by the board were prepared by Allis, and sent to the secretary of the corporation, who entered them as proceedings of regular meetings. In short, Allis continued until 1893 to act as the corporation. The street-railway company at different times purchased the lands in controversy, taking the title as to some of them in the name of Allis as trustee, others in the name of H. P. Bradford as trustee, who succeeded Allis as president of the corporation, and the balance of them in the name of S. J. Johnson as trustee. While none of the deeds specified who the grantees were trustees for, nor the objects of the trusts, it is conceded by all parties that they were trustees for the street-railway company, who was the true owner, and who paid the purchase money therefor. In 1891, the street-railway company being indebted in large sums of money to the bank, principally evidenced by overdrafts on the bank's books, Mr. Kupferle, vice president of the bank, called on Mr. Allis, and insisted either on payment of these debts or security therefor. The street-railway company being unable to pay, Allis agreed to have these lands conveyed to the bank,

or Kupferle as trustee for the bank, to be held as security for the then existing indebtedness, or any money thereafter borrowed by the street-railway company from the bank. In pursuance of this agreement, Allis, on the 21st day of July, 1891, by proper deed, conveyed the lands held by him as trustee as aforesaid to Mr. Kupferle, describing him as trustee for the bank, but otherwise the deed was in usual form, without any limitations or description of the trust. The other parties, Bradford and Johnson, failing to execute promptly deeds to Mr. Kupferle for the lands held by them as trustees, Mr. Kupferle, as vice president of the bank, on the 15th day of April, 1892, wrote a letter to Mr. Bradford, as president of the street-railway company, which letter was written on the bank's paper, informing him that the board of directors of the bank had directed him to demand from the persons holding property of the street-railway company, as trustees, a conveyance thereof to the bank, as security for the debts due it from the street-railway company. In compliance with this request, Bradford and Johnson each executed deeds for the realty held by them, respectively, as trustees for the street-railway company, to Kupferle, describing him as trustee, but not mentioning the beneficiary nor the object of the trust. In consideration of these conveyances, payment of the debts due the bank from the street-railway company was extended, and new credits granted. There is now a large sum of money due the bank, which was by the comptroller placed in the hands of the receiver, and the complainant is the receiver of the bank, and the object of these bills is to have these lands subjected to the payment of the bank's debt, the deeds to Kupferle being treated as mortgages. Mr. Kupferle makes no claim to the lands, but, on the contrary, in his answer and deposition, which are signed by him, declares that he held the legal title to all of these lands as trustee for the bank, to secure any and all indebtedness due the bank from the street-railway company at the time the deeds were executed and delivered to him or thereafter contracted. Nor do the grantors of Kupferle make any claim to the property, it being agreed that they merely held them as trustees for the street-railway company. None of the parties pleaded the statute of frauds, but in the argument on the final hearing the defenses were that the deeds to Kupferle are absolutely void, for the following reasons: First, that none of the deeds disclose the object of the trust, nor is there any evidence in writing on that subject; second, that the deeds from Bradford and Johnson fail to show for whose benefit Kupferle was the trustee; third, that Allis, Bradford, and Johnson holding the legal title as trustees for the street-railway company, which fact was known to the bank, the deeds from the trustees are void, unless authorized by the beneficiary, the street-railway company, to execute them; fourth, that such authority must be in writing, and, the street-railway company being a corporation, it could only be granted by resolution of its board of directors, which was never obtained.

John McClure and Auten & Hill, for complainants.

Rose, Hemingway & Rose, for defendants.

TRIEBER, District Judge (after stating the facts). Without determining whether the statute of frauds can be considered on final hearing, if not pleaded, which is very doubtful (see Wood, St. Frauds, § 537), the claim that the failure of the deeds to Kupferle to show for whom he was trustee, or the object of the trust, vitiates the deeds for failure to comply with the statute of frauds, cannot be sustained.

The Arkansas statute of frauds, following that of England, provides:

"All declarations or creations of trust or confidences of any lands or tenements shall be manifested or proven by some writing signed by the party who is or shall be by law enabled to declare such trusts or by his last will in writing, or else they shall be void." Sand. & H. Dig. § 3480.

Counsel for defendants refer to Grafton v. Cummins, 99 U. S. 100, 25 L. Ed. 366; Littell v. Jones, 56 Ark. 146, 18 S. W. 497; Freeport v. Bartol, 3 Greenl. 345; Robinson v. Robinson, 45 Ark. 481; and other cases of that kind,—to sustain their contention; but a reference to those authorities shows that they were all cases wherein the party holding the legal title was sought to be held as a trustee against his wishes, or where, as in Grafton v. Cummins, it was sought to enforce an alleged purchase of real estate where the contract for the purchase was not made in writing, nor any sufficient memorandum thereof made in writing and signed by the party sought to be charged. In Robinson v. Robinson, the land was purchased by the plaintiff, and the deed therefor executed, at plaintiff's request, to the defendant, who was his son, and the court held that, as there was no evidence that the defendant, before or at the time the deed was executed or delivered, made any declaration, promise, or agreement in writing to hold the land in trust for his father, there could be no trust by reason of the statute of frauds, and the relationship of father and son existing between the parties raised the presumption that the purchase was intended as an advancement or gift to the son. In Littell v. Jones, the attempt was made to enforce a contract of purchase, evidenced by a receipt which did not comply with the requirements of the statute; hence the court declined to enforce it. Nor are the quotations from the text-books any more applicable, as they only refer to cases in which it is sought to establish an express trust, as against the holder of the legal title, by reason of verbal promises which he repudiated. If this were an action by the bank against Kupferle, who refused to recognize the rights of the bank, and he had pleaded the statute as a defense, the result might perhaps be different.

The general rule is that where in a deed the word "trustee" is added to the name of the grantee, but there is no declaration of trust, the word "trustee" may be regarded as descriptio personæ. Greenwood Lake & P. J. R. Co. v. New York & G. L. R. Co., 134 N. Y. 435, 21 N. E. 874; Andrews v. Real-Estate Co., 92 Ga. 260, 18 S. E. 548.

In Andrews v. Real-Estate Co., supra, this identical question was before the court. The Georgia Code (section 3159, subd. 4) provided:

"Where a trust is expressly created, but no uses are declared, or are insufficiently declared, or extend only to a part of the estate, or fail from any cause, a resulting trust is implied for the benefit of the grantor or testator or his heirs."

The court, in passing upon the deed, which was exactly like those in this case, held:

"Here no trust is expressly created. The premises are not conveyed in trust expressly, but the vendees are only described by the word 'trustees.' * * * The result is that while we may conjecture, from the use of the word 'trustees,' and the phraseology, 'their successors and assigns,' that beneficiaries other than the vendees themselves may possibly have been in contemplation, for otherwise why the vendees were described as trustees is not easily accounted for without looking outside of the deed, yet this bare possibility furnishes no legal grounds for disregarding the use expressly declared

in the deed, and holding that the vendees were not the beneficiaries, and the sole beneficiaries, in whose behalf the conveyance was made. The better and safer construction is to hold that the word 'trustees,' wherever it occurs in the deed, is mere surplusage, and ought to be rejected in reading the conveyance and adjusting its legal effect." 92 Ga. 262, 18 S. E. 549.

Nor do the authorities cited by counsel sustain the contention "that the trust will not be executed if the precise nature of it, and the particular persons who are to take as cestuis que trustent, and the proportions in which they are to take, cannot be ascertained." None of these authorities (1 Perry, Trusts, § 83; Browne, St. Frauds, § 108; Hill, Trustees, p. 61; 2 Story, Eq. Jur. § 979a; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33) have any application to the facts of this case. These authorities all refer to voluntary trusts created by will or gift, the rule in such case being that such a trust, without a certain beneficiary who can claim its enforcement, is void. In the Tilden Case, the court, in speaking of the trust sought to be created, said:

"If the Tilden trust is but one of the beneficiaries which the trustees may select as an object of the testator's bounty, then it is clear and conceded by the appellants that the power conferred by the will upon the executors is void for indefiniteness and uncertainty in objects and purposes. The range of selection is unlimited. It is not confined to charitable institutions of this state, or of the United States, but embraces the whole world. Nothing could be more indefinite and uncertain, a broader and more unlimited power could not be conferred, than to apply the estate to 'such charitable, educational, and scientific purposes as in the judgment of my executors will render said residue of my property most widely and substantially beneficial to mankind.' 'A charitable use, which neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man.' Perry, Trusts, § 637. 'Such a power is distinctly in contravention of the statute of wills. It substitutes for the will of the testator the will of the donees of the power, and makes the latter controlling in the disposition of the testator's property. That cannot well be said to be a disposition by the will of the testator with which the testator had nothing to do, except to create an authority in another to dispose of the property according to the will of the donees of the power.' Read v. Williams, 125 N. Y. 569, 26 N. E. 731."

In the case at bar it is not sought to establish such a trust as against the holder of the legal title, who is Kupferle; but the bank seeks to enforce an equitable mortgage, evidenced by a deed absolute on its face, to a grantee who confesses that he holds the legal title merely as trustee for the bank to secure the payment of debts due to the bank from the street-railway company, and he does not plead the statute of frauds. He waives it, and no one else can plead it. Wood, St. Frauds, p. 878.

If the conveyance to Kupferle was a valid conveyance, parol proof is admissible to show that, although the deed is on its face absolute, yet it was executed by the grantors and accepted by the grantee for the purpose of holding the lands conveyed as security for debts due from the grantors or their cestui que trust to the grantee or others for whom he was acting. Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775; Brick v. Brick, 98 U. S. 514, 25 L. Ed. 256. If any person has the right to plead the statute of frauds in this case, it would be Kupferle, and not the defendant.

As it is conceded that Allis, Bradford, and Johnson held the naked

legal title to the lands for the street-railway company, who paid the purchase money, was a conveyance from these trustees, without the written consent or authority of the beneficiary, valid? If the convey-ances had been made by these parties for considerations paid to them individually, then there can be no doubt but that they would be void, as Kupferle, as well as the bank, had full notice that the true owner of the property was the street-railway company, and that his grantors only held the naked legal title for the use of the street-railway com-pany. Had the deeds to Allis, Bradford, and Johnson shown on their face that they only held as trustees for the street-railway company, then under the statute of uses, which is in force in this state, the legal and equitable title would have been merged in favor of the usee, the street-railway company, but, as the usee was not named in the deeds, the statute of uses does not apply.

The conveyances to Kupferle now sought to be foreclosed as equitable mortgages were solely for the benefit of the street-railway company. The money due the bank was loaned to the street-railway company, the extensions were granted to it on the faith of these con-veyances, and new loans made to the street-railway company in reli-ance upon the security supposed to be possessed by the bank by rea-son of these conveyances.

Notwithstanding the statute of frauds, a deposit of title deeds by the owner of an estate, either for the purpose of securing a debt al-ready due, or a sum of money advanced at the time the deposit is made, operates as an equitable mortgage, and parol evidence to show the object of the deposit is admissible. Wood, St. Frauds, § 240; Browne, St. Frauds, § 62.

Without discussing the powers exercised by Allis with the full knowledge and consent of the board of directors of the street-railway company, a court of equity will not suffer a fraud to be perpetrated. The street-railway company received the entire consideration, and to permit it now to repudiate the acts of the person whom it held out to the world as clothed with full authority, without returning the money received by it, would be, to say the least, inequitable. This is not the object of the statute of frauds. In the language of Lord Hardwicke: "The statute of frauds should never be understood to protect fraud, and therefore, whenever a case is infected with fraud, the court will not suffer the statute to protect it." Reech v. Kenne-gal, 1 Ves. 125. Nor does it matter that the street-railway company is now in the hands of receivers, for they took the assets in trust for creditors, not for value and without notice, but subject to all the claims and defenses that might have been interposed against the corporation. Their rights in the property of the corporation which came into their possession are no greater than those which the in-solvent corporation possessed. Scott v. Armstrong, 146 U. S. 499-507, 13 Sup. Ct. 148, 36 L. Ed. 1059; Bank v. Yardley, 165 U. S. 634-653, 17 Sup. Ct. 439, 41 L. Ed. 855.

Complainant is entitled to a decree of foreclosure, and as the prop-erty has been sold in pursuance of an interlocutory decree entered by consent of parties, and the proceeds, less the amount due the re-ceiver of the street-railway company for moneys advanced for taxes,

etc., deposited in the registry of the court, and as this sum is much less than the amount due complainant, and no personal judgment is asked in this proceeding, the decree may be that the sum in the registry of the court be paid over to complainant, if the parties will consent to such a decree, the consent to be without prejudice to the rights of the parties to appeal from any other part of the decree; but, if the parties will not agree to that, there will be a reference to the master to ascertain the amounts due the complainant from the street-railway company.