### Appeal of BOSTON STRUCTURAL STEEL CO.     Docket No. 836.

On the evidence, the corporations involved in this appeal are affiliated.

Submitted April 1, 1925; decided April 13, 1925.

*Fred C. Fernald, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before GRAUPNER, GREEN, LANSDON, and LITTLETON.

### FINDINGS OF FACT.

1. The taxpayer is a Massachusetts corporation, incorporated in 1913. It is engaged in the fabrication of structural steel with its principal office in Cambridge, Mass.

2. During the years 1918, 1919, and 1920, the officers of the taxpayer were Lester C. Gustin, president and director; William P. Shine, treasurer and director; and B. Devereux Barker, legal counsel, clerk, and director. For the same years issued stock consisted of 150 shares of common stock at the par value of $100 per share, and the stockholders of record, as shown by the stock-book, were Lester C. Gustin, 26 shares; William P. Shine, 76 shares; and B. Devereux Barker, 48 shares.

3. On March 18, 1916, B. Devereux Barker purchased 48 shares of the common stock of the taxpayer, for which he paid cash in two installments of $2,600 on the date of purchase and $2,200 on May 9, 1916. On March 17, 1916, and before Barker made any payments on account of the stock purchased by him, Gustin entered into written agreement with Barker, of which the pertinent part is as follows:

I, Lester C. Gustin, of Arlington, in consideration of One Dollar to me in hand paid by B. Devereux Barker of Boston, Massachusetts, the receipt whereof is hereby acknowledged, hereby agree to purchase of said Barker forty-eight (48) shares of stock of Boston Structural Steel Company for the sum of forty-eight hundred ($4800) Dollars and accrued interest at the rate of six per cent. per annum from March 17, 1916, and to pay therefor in cash on or before July 1, 1916.

This agreement was also signed by William P. Shine as a witness. In pursuance with such agreement, Gustin paid Barker $1,500 on April 21, 1916; $650 on May 23, 1916; $650 on June 29, 1916; and $1,000 on July 5, 1916, and on the latter date became the owner in fact of the 48 shares of stock purchased by Barker on March 18, 1916, but the said stock was not transferred to Gustin on the books of the taxpayer until December 30, 1920.

4. At all the meetings held by the stockholders of the taxpayer between July 5, 1916, and December 30, 1920, there was unanimous action on all matters determined, and therefore Barker, who, as legal counsel and clerk was present at all meetings, nominally or technically voted the 48 shares of stock that were of record in his name but that were owned in fact by Gustin during all of the years involved in this appeal.

5. The Bay State Erecting Co. is a Massachusetts corporation, incorporated in 1916 as a subsidiary of the taxpayer. Its principal and only offices are in the offices of the taxpayer in Cambridge, Mass. During the years 1918, 1919, and 1920, it was engaged in the business of erecting structural steel. For all that time its officers were Lester C. Gustin, president and director; James A. McDonald, vice president, general manager, and director; William P. Shine, treasurer and director; and Willis A. Martin, clerk. During the years involved in this appeal the stock of the Bay State Erecting Co. consisted of 100 shares of common stock of a par value of $100 per share, of which the owners of record were: Lester C. Gustin, 33 shares; James A. McDonald, 33 shares; William P. Shine, 33 shares; and Willis A. Martin, 1 share. When the company was organized Gustin and Shine each gave his note in the amount of $1,000 for the stock issued to him and McDonald paid $1,000 in cash for his 33 shares of stock.

6. At the time that McDonald became a stockholder and the vice president and general manager of the Bay State Erecting Co., it was orally agreed by Gustin, Shine, and McDonald that if Mc-

Donald should be discharged, or for any other reason should leave the employment of the corporation, he would in that event return his stock and receive the $1,000 which he paid for the same. The company, or McDonald, could terminate McDonald's employment, and, in either event, the stock held by McDonald was to be returned in exchange for the amount of $1,000. Such termination of employment, return of stock, and payment of $1,000 did occur, but at a date subsequent to the year involved in this appeal.

7. Except during the period from March 19, 1916, to July 5, 1916, B. Devereux Barker was not at any time the owner in fact of any of the capital stock of the taxpayer, although at different times the stock book showed that he owned one share or two shares or three shares. Such stock was owned in fact by Shine, and was of record in the name of Barker only for the purpose of qualifying the said Barker to act as a director of the taxpayer. The single share of stock of the Bay State Erecting Co. that was of record on the stock books of that concern as the property of Willis A. Martin was treasury stock in fact, and was issued to Martin only for the purpose of qualifying him to act as a director of that corporation. Neither Barker nor Martin was at any time an owner in fact of the qualifying shares that were of record in their names on the stock books of the taxpayer and the Bay State Erecting Co., respectively, nor did either Barker or Martin ever pay anything for the said qualifying shares that were of record in their names.

8. The taxpayer was what is known as an open-shop concern. The Bay State Erecting Co. employed only union workmen, and was organized by the stockholders of the taxpayer for the purpose of evading or avoiding controversies with trades-unions. McDonald had been president of the Structural Steel Workers Union of Boston, and during the years 1918, 1919, and 1920 was, at all times, in good standing in that organization. The taxpayer employed him, caused him to be employed by the Bay State Erecting Co., and permitted him to become a stockholder of that company for the purpose of keeping on good terms with the trades-unions of Boston.

9. The two corporations involved in this appeal operated during the years in question as a business unit. They occupied the same offices, and such offices were supplied by the taxpayer and bore its name only. The accounts of both concerns were kept by the same bookkeepers. The sole stockholders in fact of the taxpayer held the offices of president and treasurer of each corporation, and were directors of both. The taxpayer secured all the contracts for steel construction, and turned them to the subsidiary corporation for execution and supplied all the funds necessary for the operation of both corporations. The Bay State Erecting Co. made no contracts and transacted no business on its own account, but at all times acted as subsidiary to the taxpayer, which alone was financially responsible for all the obligations and undertakings of both corporations.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

LANSDON: To support his refusal to permit the taxpayer and the Bay State Erecting Co. to file consolidated income-tax returns for the years 1918, 1919, and 1920, the Commissioner relies (1) on the fact that, during the years involved, B. Devereux Barker was the owner of record of 48 shares of the common stock of the taxpayer and was not a stockholder of the Bay State Erecting Co., and (2) that for the same years James A. McDonald was the owner of 33 shares of the common stock of the Bay State Erecting Co., and was not a stockholder of the taxpayer.

The Board can not agree with the first contention of the Commissioner. The evidence is clear that, from July 5, 1916, and, through all the years in question, Gustin was the owner in fact of the shares of stock which, during that time, stood in the name of Barker on the stock-book of the taxpayer. In all the circumstances, the stock was the property of Gustin. See the case of *Brick* v. *Brick*, 98 U. S. 514.

The second contention of the Commissioner depends upon the meaning of the word "controlled," as used in section 204 (b) of the Revenue Act of 1918. With respect to the stock of the Bay State Erecting Co., owned by McDonald, it is clear that Shine and Gustin were free, at all times, to assert control. In the circumstances, both corporations were in fact controlled equally by Shine and Gustin and were therefore entitled to make consolidated income and profits tax returns by reason of the ownership or control of their stock by closely affiliated interests.