**PENN MUT. LIFE INS. CO. v. MEGUIRE et al.**

No. 934.

District Court, W. D. Kentucky, at Louisville.
March 5, 1936.

Bruce & Bullitt, of Louisville, Ky., for plaintiff.

David R. Castleman and Norman, Quirk & Graham, all of Louisville, Ky., for Kathleen H. Meguire.

Milliken & Handmaker, of Louisville, Ky., for United States Trust Co., executor of will of Kenneth U. Meguire.

Oscar O. Bader and Crawford, Middleton, Milner & Seelbach, all of Louisville, Ky., for First Nat. Bank.

D. L. Street, of Louisville, Ky., for Kenneth U. Meguire, Jr., and Donald Sterling Meguire.

HAMILTON, District Judge.

Kenneth U. Meguire, a citizen of Kentucky, and a resident of Louisville therein, died March 10, 1935, and left surviving him his wife, Kathleen H. Meguire, and two children, Kenneth U. Meguire, Jr., and Donald Sterling Meguire.

At the time of Meguire's death, he was indebted to the First National Bank of Louisville, Ky., in the sum of approximate-

ly $9,500, and was jointly liable on a primary obligation of the Harlan Coal Company, a corporation of which he was the principal stockholder, in the approximate amount of $50,000 due the National Bank of Kentucky, which obligation had been in existence since 1923.

On October 18, 1918, the plaintiff, the Penn Mutual Life Insurance Company, executed and delivered to the deceased, Kenneth U. Meguire, its policy of life insurance serially numbered 850,799 in the principal sum of $25,000, with his wife, Kathleen H. Meguire, beneficiary, if she survived, otherwise to his estate. On November 7, 1918, the plaintiff issued another policy on Meguire's life serially numbered 851,632, in the sum of $18,384, with his wife, Kathleen H. Meguire, beneficiary. On August 18, 1922, this policy was, with the consent of the beneficiary, surrendered to the plaintiff company and simultaneously therewith it executed and delivered to Meguire another policy of the same serial number payable to his estate.

Some time prior to June 23, 1919, the date not shown in the record, Meguire, the insured, had named the National Bank of Kentucky trustee, under a trust agreement, of the proceeds on maturity of policy No. 850,799, and on that date the trustee and the insured named the Harlan Coal Company, a corporation incorporated under the laws of Kentucky, beneficiary of the policy.

On August 18, 1922, the Harlan Coal Coal Company assigned all of its interest in the policy to the insured or his estate. On August 31, 1922, the insured, with the consent of the plaintiff, changed the beneficiary under both policies, providing that the net proceeds thereof should be retained by the company under the interest privilege clause, and interest paid thereon in monthly portions to his wife, Kathleen H. Meguire, during her lifetime, and at her death, the remaining net proceeds to be payable in equal shares to their children, Kenneth U. Meguire, Jr., and Donald S. Meguire, or, if deceased, to their lawful issue.

On May 23, 1924, the insured and his wife, with the consent of the plaintiff, made further changes in the method of the payment of the proceeds of the policy, and the insured relinquished the right to change the beneficiary. On October 16, 1931, with the consent of the company, the insured and his wife made other changes in the method of payment, not material here.

Prior to December 31, 1934, the insured became indebted to the plaintiff in the sum of $2,524.95 on policy No. 850,799. The cash surrender value of the two policies December 31, 1934, was $12,894.59, and for the purpose of obtaining loans at a lower rate of interest, Mr. Meguire made an agreement with the First National Bank of Louisville, Ky., to obtain from it a loan with the two policies as collateral security. An officer of the bank wrote the company for information as to how to transfer the policies to the bank on a collateral loan, and also advised it that its policy loans would be paid.

On December 4, 1934, the plaintiff advised the bank that the defendant, Mrs. Kathleen H. Meguire, should deliver to it an absolute assignment, executed to the insured, of her interest in the policies, and the insured should then execute an absolute assignment to the bank, and it inclosed company forms for the execution of these assignments.

On December 31, 1934, the defendant Kathleen H. Meguire executed, on the form provided by the company, and delivered to the insured, at his request, the following paper:

"Absolute Assignment.

"Policy No. 850,799 and 851,632 in the Penn Mutual Life Insurance Company, of Philadelphia, Pennsylvania, on the life of Kenneth U. Meguire.

"If this instrument is executed only by the Insured, then the beneficiary under this Policy is hereby changed to the Insured's executors, administrators or assigns (if the right to do so is reserved to the Insured alone).

"For value received, I hereby assign all right, title, and interest in the above Policy unto the insured.

"The provisions of the assignment dated October 16, 1931 for payment of the proceeds of said policies in instalments are hereby cancelled and said proceeds made payable in one sum.

"This assignment is subject to the claims of the Penn Mutual Life Insurance Company for indebtedness on account of said policy.

"It is understood and agreed:

"1. That the assignee or his legal representatives, without the joinder of any one, may at any time borrow upon, sur-

render or assign the above Policy in his own name and for his own benefit.

"2. Signature to this assignment is a warranty that the undersigned is the sole and absolute owner of the above policy, and that no proceedings in bankruptcy are pending against the undersigned.

"Witness my hand and seal at Louisville, State of Kentucky, this 31 day of December, 1934.

"Signed, Sealed and Delivered, in the presence of:

"E. M. Oltman
"Kathleen H. Meguire. (L. S.)
"Subscribed and sworn to before me this 31 day of December, 1934.

"James Curran, Notary Public,
Jeff. Co., Ky.
"My Commission expires Aug. 6, 1938."

On the same date, the insured executed and delivered to the First National Bank, which in turn delivered it to the insurance company, the following paper:

"Absolute Assignment of Collateral.

"Policy No. 850,799 and 851,632 in the Penn Mutual Life Insurance Company, of Philadelphia, Pennsylvania, on the life of Kenneth U. Meguire.

"If this instrument is executed only by the Insured, then the beneficiary under this Policy is hereby changed to the Insured's executors, administrators or assigns (if the right to do so is reserved to the Insured alone).

"For value received, I hereby assign all right, title and interest in the above Policy unto First National Bank of Louisville, Ky. as Collateral Security.

"It is understood and agreed:

"1. If there be any indebtedness now outstanding against the above Policy, this assignment shall be subject to the claims of said Insurance Company on account of such indebtedness.

"2. That the assignee or his legal representatives, without the joinder of any one, may at any time borrow upon or surrender the above Policy, without responsibility on the part of the Company to see to the proper disposition of the balance, if any, above the claim of such assignee.

"3. That if the above Policy shall mature as a death claim or as an endowment (if it be on the endowment plan) while this assignment is in force, the Company shall pay the net proceeds to the assignee as collateral security under the terms hereof.

"4. That the above Policy, if and when released by the assignee, shall automatically become payable in full to the person named, in the last record of beneficiary on file with the Company prior to such release, subject to whatever right to change the beneficiary thereafter as existed in such last record of beneficiary.

"5. Signature to this assignment is a warranty that the undersigned is the sole and absolute owner of the above policy, and that no proceedings in bankruptcy are pending against the undersigned.

"This assignment is subject to the claims of the Penn Mutual Life Insurance Company for indebtedness on account of said policy.

"Witness my hand and seal at ——— State of ——— this 31st day of December, 1934.

"Signed, Sealed and Delivered in the presence of:

"Margaret Wolfenberger
"Kenneth U. Meguire (L. S.)"

The insured died on March 10, 1935, and the plaintiff became indebted on the two policies to the beneficiaries thereof in the sum of $43,556.23. The First National Bank of Louisville, Ky., made claim for $9,500 of said sum, together with interest thereon at 4½ per cent. from December 31, 1934, until paid. The defendant, the United States Trust Company, executor of the estate of the deceased, made claim for the entire proceeds of both policies. The defendant Kathleen H. Meguire also made claim for the entire proceeds of the policies, less the sum due the First National Bank. The infant defendants, Kenneth U. Meguire, Jr., and Donald S. Meguire, made no claim, but were subsequently made parties to this action on the motion of the defendant the United States Trust Company, executor.

The executor based its claim solely on the assignments executed by the insured and his wife, above quoted.

The defendant Kathleen H. Meguire claims that she was entitled to the proceeds of the policies because the insured was without right to change the beneficiary of said policies after May 23, 1924, as he had on that date expressly agreed that the right to change the beneficiary was not reserved to him, and that the assignment by her to him of December 31, 1934, was executed by her at the solicitation of the insured and solely for the purpose of his obtaining a loan from the First Na-

tional Bank of Louisville, Ky., at an interest rate of 4½ per cent. instead of 6 per cent., which was then being paid by the insured to the plaintiff, and that it was agreed and she did not intend to surrender any of her right, title, or interest in any of said policies except for the purpose stated. She received no cash consideration for surrendering her right, title, and interest in said insurance.

The plaintiff, the Penn Mutual Life Insurance Company, filed its interpleader June 24, 1935, and paid into the registry of this court $43,556.26, the full amount due under the two policies. Subsequently, by agreement of the parties, the indebtedness due the First National Bank of Louisville, Ky., was paid and an order and judgment entered releasing the plaintiff from any and all liability of whatsoever kind or nature arising under the two policies, and the executor of the insured, by proper pleading, has first set up a plea to the jurisdiction of the court and its claim to the entire proceeds of the policies, less the sum paid the First National Bank.

The defendant Kathleen H. Meguire has by proper pleading set up her claim to the proceeds of said policies, and the infant children have likewise done so by their guardian.

The evidence in the case substantially sustains the claim of Kathleen H. Meguire that her sole purpose in executing the assignment was to enable the insured, Kenneth U. Meguire, to obtain a loan from the First National Bank with the policies as collateral.

The plaintiff, the Penn Mutual Life Insurance Company is a citizen of the state of Pennsylvania. All the claimants to the proceeds of the policies are citizens of the commonwealth of Kentucky. 28 U.S.C.A. § 41(26) (44 Stat. 416), provides that the District Court shall have original jurisdiction of bills of interpleader by insurance companies, averring that one or more persons who are bona fide claimants against said company reside within the territorial jurisdiction of said court.

The act provides that if the policy or certificate is payable to the estate of the insured and has not been assigned in accordance with the terms thereof, the District Court of the District of the residence of the personal representative of the insured shall have jurisdiction of the suit. If the policy has been assigned, the residence of the assignee controls the jurisdiction; and if payable to beneficiaries, their residence controls.

This court has jurisdiction of the subject-matter of this suit if the action instituted by the plaintiff was one of interpleader. Generally speaking, the ground of every bill of interpleader is the hazard or danger of injury to the plaintiff from the doubtful or conflicting claims made by two or more parties. Obviously, where an insurance company may be discharged from all liability on one of its policies by payment to one party, a bill of interpleader will not lie; but where a hazard would result in the case of payment of the amount to either of the claimants, it would be inequitable to compel the insurance company to act at its risk, and it may, if the other necessary elements are present, interplead the contending claimants. The essential requisites to equitable relief by interpleader are: (1) That two or more persons have a claim against the plaintiff; (2) that they claim the same thing; (3) that the plaintiff has no beneficial interest in the thing claimed; and (4) that he cannot determine, without hazard to himself, to which of the defendants the thing of right belongs.

The mere fact that a contractual relationship exists between plaintiff and one of the defendants, under which the fund is required to be paid to such claimant, does not of itself defeat the right of interpleader. City Bank v. Skelton, 5 Fed.Cas. page 747, No. 2,739, 2 Blatchf. 14; Love v. Hartford Life Insurance Co., 153 Mo. App. 144, 132 S.W. 335.

The facts set up in the bill of complaint herein fully meet all the requirements of a bill of interpleader. They are not disputed. The plaintiff would not be a nominal party to any action instituted by any of the claimants to recover the proceeds of the policies, and is not a nominal party to this action. Wilson v. Oswego Township, 151 U.S. 56, 67, 14 S.Ct. 259, 38 L.Ed. 70; Massachusetts & Southern Construction Co. v. Cane Creek Township, 155 U.S. 283, 286, 15 S.Ct. 91, 39 L.Ed. 152.

Suits for interpleader in which actions in other courts were enjoined were familiar to equity when the Constitution was adopted. Spring v. South Carolina Insurance Co., 8 Wheat. 268, 5 L.Ed. 614. Where the citizenship of the interpleader is in one state and the claimant in an-

other, the federal court has jurisdiction. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 191, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950.

The purpose of the interpleader statute was to give the stakeholder protection where adverse claimants resided in different states. The plaintiff in this case could have instituted the action in this court without statutory authority and could have obtained relief against the conflicting claims of the claimants, because all of them happen to be citizens of the commonwealth of Kentucky and the Western Judicial District, but if some of them had been citizens of another state, the plaintiff could not have gotten an acquittance from all of the claimants in a single action. Sanders v. Armour Fertilizer Works, supra.

The case of Calloway v. Miles (C.C.A.) 30 F.(2d) 14, 15, relied on by the executor, does not decide the question we have here. Dismissal was ordered because the interpleader did not state a cause of action. The court did say in that case that the purpose of 28 U.S.C.A. § 41(26) was to confer "jurisdiction upon the District Court 'of suits in equity begun by bills of interpleader,' where adverse claimants of insurance are residents of different states with one residing in the district where the suit is brought."

The case of Ross v. International Insurance Co. (C.C.A.) 24 F.(2d) 345, is more nearly in point.

In view of the fact that I have concluded that the plaintiff, the Penn Mutual Life Insurance Company, is not a nominal, but a necessary party to this action, the cases of Mathers & Mathers v. Urschel (C.C.A.) 74 F.(2d) 591; Theobald-Jansen Electric Co. v. Mayer Co. (C. C.A.) 77 F.(2d) 27, have no application.

The case of Mutual Life Insurance Co. v. Lott (D.C.) 275 F. 365, would seem to support the executor's contention that this court does not have jurisdiction of the subject-matter of this action. The whole basis for that decision is that the insurance company is not a necessary, but a nominal, party to the litigation. The cited case was more concerned with the application of the statute as to interpleader than with the general subject. If the plaintiff in an interpleader suit is only a nominal party, we have an anomaly in the law; that is, a party without substantial interest authorized to come into court and institute an action. Such petition is incongruous.

An action could not have been maintained by any of the claimants without making the insurance company a party. By interpleader, the risk of several actions being filed against it, or it being compelled to pay more than once the same obligation, is avoided. The chance of the insurance company being involved by conflicting claimants is too substantial for any court administering justice to hold it only a nominal party to such action.

■ Under the principle of interpleader, the plaintiff, being a citizen of another state, had the right to institute the original action and pay the money into the registry of this court. The fund is in the possession of this court without objection from any of the parties, and at the inception of the proceeding it had jurisdiction, and under such state of facts may retain it.

Kathleen H. Meguire testified in her own behalf in this action, and in substance stated that she executed the assignment of December 31, 1934, at her residence, and that no one else was present; that she acknowledged it over the telephone; that her purpose in signing the assignment was to secure a loan from the First National Bank with which to consolidate several loans on the insurance policies, and to obtain a lower rate of interest than was then being paid the insurance company by Mr. Meguire. She said Mr. Meguire advised her it would be necessary for her to sign the assignment in order for him to obtain this loan, which would be deducted from the amount of the insurance in case of his death, and which loan she understood to be from $6,000 to $10,000, and that it was her understanding that with this deduction the policy would remain in the same status as before, namely, that she would receive the income from the insurance until her death, and after that her children would receive the lump sum. She testified she had no idea she was ceasing to be the beneficiary, and had she so understood would not have made the assignment; that she understood the value of the policies was approximately $42,000, and only this one loan would be deducted therefrom.

■ The executor objects to the competency of this witness, because it claims under section 606, Carroll's Kentucky Civil Code of Practice "neither a husband nor his

wife shall testify while the marriage exists or afterwards concerning any communication between them during marriage." There are certain exceptions stated in the section of the Code referred to which I think are applicable here, one of which is, "in actions which might have been brought by or against the wife, if she had been unmarried"; and another, "when a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such an agency."

In the case at bar, the wife, if unmarried, could maintain an action upon or for reformation of a contract. It, therefore, follows she was a competent witness in her own behalf in this cause. She was the beneficiary of the policies before the assignment was made, and under them she could not be divested of her interest without her consent. It was necessary for her to either attend to the assignment herself or select an agent.

In the case of Devon v. Kobigen, 11 Ky.Op. 882, Judge Pryor, speaking for the Court of Appeals of Kentucky, construing section 606, said:

"If the objection made to the competency of the witness or her testimony on the ground that she is the wife of the codefendant is available, then the judgment below is erroneous. We perceive nothing, however, in the objection. The action was instituted for the purpose of canceling the conveyance made by the husband to the wife upon the ground that it was in fraud of the husband's creditors. The defense is that the conveyance was executed in performance of an agreement between the husband and wife that the conveyance should be made to the wife. The consideration, as alleged is that the proceeds of the real estate of the wife paid for the land.

"The wife, who is a defendant, testifies to this agreement, and her statement, connected with the fact that the proceeds of her estate purchased the property, is sufficient to authorize the judgment below. It is immaterial that the wife is interested or made the agreement during marriage. She can not testify for or against her husband but she may testify for herself. Code 1876, § 606, makes as one of the exceptions 'except in actions which might have been brought by or against the wife, if she had been unmarried, and in such actions either, but not both, of them may testify.'"

Compare, Wise v. Foote, 81 Ky. 10; Edwards v. Citizens' Savings Bank of Paducah, 244 Ky. 508, 51 S.W.(2d) 661.

Section 606(2) does not prohibit the widow of the deceased from testifying because that section does not apply when the testimony offered affects one who is living. Her testimony affects the representative of her husband's estate. Johnson's Adm'r v. Pigg, 242 Ky. 631, 47 S.W.(2d) 63; Ross v. Ross' Adm'r, 232 Ky. 583, 24 S.W.(2d) 287; Whittaker v. Prater, 239 Ky. 173, 39 S.W.(2d) 248.

28 U.S.C.A. § 631 (R.S. § 858; 34 Stat. 618) provides "the competency of a witness to testify in any civil action, suit, or proceeding in the courts of the United States shall be determined by the laws of the State or Territory in which the court is held." This statute requires me to follow the Kentucky law on the subject, but in view of the decision of the Supreme Court in Funk v. United States, 290 U.S. 371, 387, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, holding there was no reason for the rule prohibiting a wife from testifying either for or against her husband, I believe the Kentucky cases limiting section 606 of the Civil Code of Practice should have the full approval of this court.

[11-13] The transaction between the insured and his wife, the company, and the bank had its origin, it is conceded, in a loan of money by the bank to him, and to secure the loan, an assignment was made of the policies, nothing else being contemplated at the time. The change of beneficiary was an incident to the assignment, and while the assignment was absolute on its face, its purpose was to make reasonably certain that the company might deal directly with the bank, the lender, in the collection of its debt. An assignment of insurance absolute on its face may be shown to be qualified, and where such is fairly proven to have been the intent of the parties, it will be so held. Page v. Burnstine, 102 U.S. 664, 672, 26 L.Ed. 268; Lee v. Mutual Life Insurance Co., 82 S.W. 258, 26 Ky.Law Rep. 577; Bayse v. Adams, 81 Ky. 368; Reinhardt v. Marks' Adm'r, 93 S.W. 32, 29 Ky.Law Rep. 388; Aldrich v. Brinker (D.C.) 143 F. 563.

The rule is almost of universal application that a writing absolute in its terms, transferring property, may by extrinsic contemporary agreement be shown to be only a security for a loan. Some courts base the principle on the ground of fraud;

others on the doctrine of consideration; and others on the object to be accomplished by the parties. Relief is not required to flow from the reformation of a contract, but may be based on contemporaneous agreements not governed by the assignment contract. This principle is illustrated in the case of Brick v. Brick, 98 U.S. 514, 516, 517, 25 L.Ed. 256, where the Court said: "It is competent to show by parol what the transaction was. In the late case of Peugh v. Davis, 96 U.S. [332] 336 [24 L.Ed. 775], we stated the doctrine of equity on this subject, where an instrument was in form a conveyance, but was in fact intended as a security; and though the instrument there was a deed of real property, the principle applies when the instrument purports to transfer personal property. A court of equity, we there said, 'looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in such cases will be considered by a court of equity; it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression and to promote justice."

The assignment executed by the insured to the First National Bank contains a provision "that the above policy, if and when released by the assignee shall automatically become payable in full to the person named in the last record of beneficiary on file with the Company prior to such release, subject to whatever right to change the beneficiary thereafter as existed in such last record of beneficiary."

The assignment of Kathleen H. Meguire to the insured contained the provision: "If this instrument is executed only by the insured then the beneficiary under this policy is hereby changed to the executors, administrators or assigns, 'if the right to do so is reserved to the insured alone.'"

This provision of the assignment has no effect on the decision of this case, because it was not executed by the insured alone, but also by his wife. The assignment also contains the following clause: "The provisions of the assignment dated October 16, 1931 for the payment of the proceeds of said policies in installments are hereby cancelled and said proceeds made payable in one sum."

When the indebtedness to the bank was discharged, the status of the policies as to payment reverted to that existing immediately prior to the assignment to the bank. Crowell v. Northwestern National Life Insurance Co., 140 Iowa, 258, 118 N.W. 412; Jordan v. Roden (C.C.A.) 292 F. 573, 574.

On May 23, 1924, the insured designated his wife, Kathleen H. Meguire, the irrevocable beneficiary of these policies if she survived him, otherwise to his estate. On the same date, the insured and his wife executed and delivered to the plaintiff an assignment which provided that if the policies matured as a death claim, the net proceeds should be returned by the company in accordance with the provisions of the interest privilege section (XIII), and interest paid thereon in monthly installments to Kathleen H. Meguire during her lifetime. Said assignment also provided upon the death of the survivor of said wife and said insured the net proceeds should be payable in equal shares to either of the sons living, or their lawful issue if deceased, but if no such son or issue be living, to the executor or administrator of Kathleen H. Meguire. Provided that the share of each son then living be retained under said interest privilege section and interest thereon paid to such son during his remaining lifetime. On the death of either of said sons while receiving such interest payments, that share was to be paid in equal shares to his lawful issue, but if no such issue survive, such share to be paid to the son living, both as to principal and income, but if neither be living, then in equal shares to the lawful issue. Upon the death of the living sons while receiving interest payments, if no living issue survive, the net proceeds should be paid to

the executor or administrator of Kathleen H. Meguire. This assignment also provided that prior (not subsequent) to said maturity, Kathleen H. Meguire, during her lifetime, should have full power to cancel or annul it or to make any assignment of said policies or surrender them for cash, loan, or other value.

On October 16, 1931, Mrs. Meguire alone executed and delivered to the plaintiff an assignment providing that if the policies matured as a death claim the net proceeds should be retained under the interest privilege section and paid in monthly installments to her during her lifetime. Said assignment also provided that upon the death of the survivor of the insured and said Kathleen H. Meguire, the net proceeds should be divided into the number of equal shares which represented one for each of Kenneth H. Meguire, Jr., and Donald S. Meguire, then living, and one for each of said sons, then deceased, leaving lawful issue then living, the share of said son to be paid to his living lawful issue, and the share of such living son to be retained under the interest option and interest paid thereon during his lifetime.

It was provided that each son should have the following options of withdrawal: Upon the death of the survivor of the wife or insured, if either son were thirty years of age or over, such son should have the right to withdraw in one sum one-half his share of the net proceeds in the hands of the company, and at the age of forty, to withdraw his entire share of the proceeds in the hands of the company, and when the balance in the hands of the company for either son was reduced to $1,000, the balance should be paid to such son and no longer retained by the company under the interest option. Upon the death of either son, his interest was to be paid to his living issue, and if none, paid and distributed to the other son; and if neither son be living, then the share of such deceased son in the hands of the company was to be paid to the living issue of the last deceased son. Upon the death of the survivor of said sons, while receiving interest payments, if no lawful issue of either was living, the net proceeds were to be paid to the administrator or executor of Kathleen H. Meguire, and also upon the death of said Kathleen H. Meguire, if neither of said sons be living and no lawful issue of either.

The assignment provided that prior, but not at or subsequent, to the maturity of said policies as a death claim, said Kathleen H. Meguire, if living, otherwise her executor or administrator, should have the right to make any assignment of said policies, or surrender them for cash, loan, or other value.

An insurance policy is a contract and should be interpreted by contract rules. However, it is testamentary in character, and in deciding the rights of beneficiaries the court should, as far as possible, apply the rules applicable to wills. Under such principle, the intent of the parties and the result to be accomplished are paramount. Mrs. Meguire was accorded the right to assign her interest or change the beneficiaries under the policies here in question in both the assignment of May 23, 1924, and of October 16, 1931.

At the time the loan was sought from the First National Bank, the assignment of October 16, 1931, was specifically set aside and a provision made for the payment of the proceeds of the policy in a lump sum. The financial condition of the insured, and his family, was substantially changed, and a reduction in the value of the policy to the beneficiaries resulted from the bank loan. It is apparent it was the intent of the insured, with the consent of his wife at that time, to divest the children of any interest in the proceeds of the policy. Section 654 of Carroll's Kentucky Statutes, 1930 Edition, provides that a policy of insurance on the life of any person for the benefit of a married woman shall inure to her separate use and benefit and that of her children independently of her husband and his creditors. This statute should be liberally construed for the benefit of the wife. It may be assumed that it was the intention of the insured by his life insurance to provide a way for his wife to take care of herself and children after his death.

I am of the opinion that the defendant, Kathleen H. Meguire, is entitled to the entire proceeds of the policies, less the amount due the First National Bank, and the costs in this action, including the fees to the clerk.